734 So.2d 766 (1999)
Barbara & Craig MANUEL
v.
ST. JOHN THE BAPTIST PARISH SCHOOL BOARD, et al.
No. 98-CA-1265.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
Writ Denied June 4, 1999.
*767 Randal L. Gaines, LaPlace, LA, for Plaintiffs-Appellants.
John L. Diasselliss, III, LaPlace, LA, for Defendant-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
DUFRESNE, Judge.
This is an appeal by the St. John the Baptist Parish School Board, defendant-appellant, from a judgment in favor of Craig Manuel and his wife Barbara, plaintiffs-appellees, in a personal injury suit growing out of a school bus-automobile collision. The parties have stipulated that the school board is entitled to a credit of $2,700.00 against the judgment, and we so order. However, because we do not find any other legal or manifest factual errors in the findings of the trial judge, or any abuse of his discretion in fixing the damage award, we affirm the remainder of the judgment.
The general facts are not seriously disputed. Craig Manuel drove to an evening school board meeting and parked in a lot behind the school board building. A row of school buses were also parked in the lot, apparently for the night, and Manuel parked in a spot perpendicular to the buses and about three feet in front of them. During the meeting he left to run an errand and then returned. The evidence showed that as he entered the lot he was traveling toward the front ends of the line of buses. As he approached this line of vehicles he turned and proceeded directly in front of and perpendicular to them until he reached the spot where he had parked earlier.
While he was gone, Nathalie Vicknair, a school bus driver, had gone to the lot to retrieve her bus which had been driven that day by a substitute driver and left in the lot rather than being returned to her *768 house at the end of the day. Mrs. Vicknair testified that as she was checking out her bus she noticed plaintiff's car coming into the lot, but did not pay particular attention as to where it went, and apparently lost sight of it as Manuel neared the other buses. She said that after checking over her bus, she started the engine, and when her air-brakes OK light came on she then put it in forward gear. It was right before that moment that Manuel stopped directly in front of the bus, put his car in park, and turned off the ignition. The bus struck Manuel's car at the driver's door and pushed it about 15 feet before stopping. Vicknair testified that she did not slam on her brakes immediately because she felt that to do so might exacerbate the damage to Manuel's car. The skid marks from Manuel's tires indicated that his car was pushed directly perpendicular to the bus, thus verifying that his vehicle was completely stopped when hit. It was further shown that the lot was well lit by mercury vapor lights.
There were, however, at least two factual disputes relating to the accident. Manuel said that neither the headlights, the running lights nor the interior lights of the bus were on when he stopped in front of it, but Vicknair testified that the headlights and running lights were on. Vicknair also said that after the accident Manuel's motor was running, contradicting his statements that he had turned of his engine before his car was struck. There was also an indication that Manuel's headlights were still on after the accident, but his explanation for this was that he did not have to turn off the headlights manually because they went off automatically a minute or two after the engine was shut off.
Mrs. Vicknair was not injured and her bus was not damaged. Manuel, on the other hand, claimed to have suffered a lumbar disc injury which will require future surgery, and alleged that his car sustained body and transmission damage from the collision. After a judge trial, the court found the bus driver 100% at fault for starting forward without making sure there was nothing in front of her bus. He further found that the accident had aggravated plaintiffs pre-existing back condition, necessitating future surgery, and that both the car body and transmission had been damaged. He awarded the following amounts for these damages, plus costs and judicial interest from date of demand:

General damages $52,000.00
Future medicals 44,000.00
Past medicals 6,343.50
Property damage to car 4,200.00

He disallowed plaintiffs lost wages claim, as well as his wife's claim for loss of consortium, citing a lack of proof for either of these elements of damages. The school board now appeals.
The board urges seven assignments of error, which basically involve three issues: 1) was the finding that the bus driver was 100% at fault manifestly erroneous, 2) were all elements of special personal and property damages supported by the evidence, and 3) was the general damage award an abuse of discretion.
As to the apportionment of fault, the standard of review of this question is whether that apportionment was manifestly erroneous or clearly wrong, Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985). In the present case, the determination of fault obviously revolves around factual determinations as to what exactly transpired in the few seconds before the collision. Manuel testified that he had come to a stop, put his car in park, and turned off the engine, before the impact. He also said that there were no lights on or in the bus which would have alerted him to the fact that someone was in it, or that it might otherwise be unsafe to park in front of it. Vicknair testified that she did have her lights on, and that Manuel pulled in front of her the moment she started forward, thus making it impossible for her to stop before hitting him. The trier of fact obviously credited Manuel's testimony that he had come to a complete stop in front of *769 the unlit bus, and that Vicknair started forward without properly checking her forward path. He thus assigned 100% of the fault to her. Considering the entire record of this matter, we find no manifest error in this apportionment of fault.
The board argues to the contrary that the question presented is not a factual, but rather a legal, one in that Vicknair was confronted with a sudden emergency and thus should not be held liable for her particular response to this situation, even were it judged in hindsight that that response was not the best one. To this argument we simply note that since the passage of the comparative fault law, La. Civ.Code, Art. 2323, in 1980, the defense of sudden emergency has been treated simply as one of the factual considerations which is to be used in assessing the degree of fault to be attributed to a party, Watson, supra. We therefore reject this argument.
The remaining issues concern damages. The thrust of the board's argument about the awards for past and future medical expenses and general damages is that Manuel had a pre-existing disc herniation either from a prior automobile accident or from degenerative disc disease. It asserts that while the present accident may have caused some additional soft tissue injury, it did not cause or contribute to that major pre-existing condition. Resolution of this issue of causation was, of course, a matter for the trier of fact, and depended upon his factual findings and the conclusions which he drew from those findings. This being so, we must again apply the manifest error standard of review to this inquiry.
There is no question that Manuel was injured when his car was rear-ended on December 24, 1993. Following this accident he was treated primarily by Dr. Robert Dale, a chiropractor, who described that treatment at trial. He said that Manuel's main complaints were for pains in his neck, shoulder and knee, and he was treated conservatively for these problems until August of 1994, when he was discharged. He noted, however, that occasionally during this period the patient also complained of lumbosacral and hip pains. Several months later, on December 19, 1994, Manuel reappeared at the office with pains in the lower back region. He was treated on that day and again on December 23. Several weeks later, on January 19, 1995, he re-appeared at the office again with complaints of lower right back pain which he said were present when he woke up that morning. There were some six treatments between that time and January 23, 1995, when Manuel was again discharged because the pains had diminished significantly. An X-ray of the lower back taken on January 19, 1995, indicated some narrowing of the disc space at the L5-S1 level. Throughout this entire period, the diagnosis was "soft tissue injuries."
As to treatments after the present accident of February 2, 1995, Dr. Dale testified that plaintiff came to his office on February 3 complaining of severe pain in his lower back, but this time on the left side, and with pain radiating into the lower leg. He noted that plaintiff had never complained of pains of comparable severity in any of the prior treatments, nor had the prior pains been on the left side or radiating into the leg. He said that because of the radiating pains, he suspected that disc injury may have been involved. He continued conservative treatment for another two weeks thinking that the pain might resolve itself, but when it did not, he ordered a MRI. That test was done on February 24, 1995, and revealed a disc herniation at the L5-S1 level.
Dr. Dale continued to use conservative treatments for several more months, still hoping that the pain would subside. When by July it had not, he recommended that Manuel see Dr. John Jackson, a neurosurgeon. This doctor testified by way of deposition that he first saw plaintiff on July 10, 1995. At that time he noted that the February, 1995, MRI clearly showed the ruptured disc, but in his opinion it was not *770 particularly serious in that it was only a 5mm. protrusion. He felt that no surgery was then necessary and predicted that the symptoms would decrease over time with conservative treatment.
Plaintiff continued to receive conservative treatment from Dr. Dale, as well as his local physician, Dr. Carl Poche, but the intermittent pains persisted. On March 11, 1996, he returned to Dr. Jackson, who again did not see any need for surgery at that time. Dr. Jackson continued in his opinion that over time the pain would probably diminish, but left open the possibility that it might not. On a subsequent visit of September 16, 1996, Dr. Jackson was still not recommending surgery. However, on November 1, 1996, when plaintiff appeared complaining of worsening pains, he ordered a second MRI. That test confirmed the earlier one in showing the 5mm. herniation at L5-S1. Because of the continuing pain, Dr. Jackson recommended surgery to remove the disc and fuse the spine. As of August 11, 1997, Dr. Jackson was still of the opinion that surgery was recommended. He said that his fee for the surgery would be $14,000.00, and that the hospital stay would be up to two and one-half times as much.
On the issue of causation, both Drs. Dale and Jackson thought that plaintiff injured the disc in the first accident, but that the symptoms of that injury had almost disappeared a year later. Both also agreed the second accident exacerbated the prior condition, and caused the more severe pain for which surgery would be needed. The school board had plaintiff examined by its own consulting physician, Dr. Robert Steiner, an orthopedic surgeon. This doctor was of the opinion that the disc herniation existed prior to the bus accident of February 2, 1995. He noted that while X-rays do not actually show herniated disc, they do show narrowing of discs spaces, a finding related to herniation. He said that the X-ray of January 19, 1995, showed such a narrowing, thus indicating that the disc was ruptured before the accident with the bus. He found that X-ray to be basically the same as one taken the day after the bus accident, as well as being consistent with the MRI of February 24, 1995. His opinion was that the bus accident did not further injure the disc, and he also saw no need for the surgery recommended by Dr. Jackson.
Based on the above conflicting testimony as to the cause and severity of plaintiff's complaints, the trier of fact made determinations in his favor. Again, we find no manifest error in his crediting the testimony of plaintiff, and his long-term treating chiropractor and neurosurgeon, over that of defendant's consultant who saw plaintiff on one occasion and did not treat him. We therefore must affirm those findings.
The final issues concern damages. The school board does not argue that $42,000.00 would not be the cost of the surgery were it performed, but rather that the accident did not cause the injury necessitating the surgery. We have already decided that the trier of fact did not fall into manifest error in concluding that the accident did lead to the need for this surgery, and we therefore rule that this amount was properly awarded. The school board also asserts that the general damage award of $52,000.00 was an abuse of discretion, repeating its argument that the accident did not rupture the disc, but only caused some soft tissue injury for which a much smaller general damage award would be appropriate. Again, we point out that the trier of fact found otherwise, and for a ruptured disc requiring surgery the general damage award made here is not an abuse of the trial judge's discretion. The school board also contests the award of $1,500.00 for plaintiff's transmission repairs. Plaintiff testified that the transmission was fine before the accident, but did not shift properly afterwards, and he introduced the transmission repair bill for the above amount. Obviously the trier of fact believed his testimony and awarded this item of damages. We find no error in *771 this resolution of that item. As noted above, however, the parties agree that the school board has already paid the $2,700.00 bill for the automobile body repairs, and is thus entitled to a credit of that amount against the judgment.
For the foregoing reasons, the judgment of the trial court is amended to provide a $2,700.00 credit to the school board. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED AS AMENDED.