McClendon, j.
| ¡¿Defendants, an insurer and its insured, appeal a trial court judgment assigning its insured with sole fault for causing an accident. Defendants also seek review of the amounts awarded to the plaintiff for medical specials and general damages. For the reasons that follow, we amend the judgment to assign 25% fault to the plaintiff, and affirm the judgment, as amended.
FACTS AND PROCEDURAL HISTORY
On October 28, 2010, Ms. Gertrude Ward was exiting a gas station and attempting to make a left turn into the northbound lanes of South Range Avenue in Denham Springs. To reach the northbound lanes, Ms. Ward had to cross three lanes of southbound traffic. Ms. Ward was able to traverse the first two lanes, but did not see a Livingston Parish school bus, which was being operated by Joan Delatte within the third lane of travel, until she entered the lane being occupied by the school bus. The school bus struck the side of Ms. Ward’s vehicle.
Ms. Leah Harbin, who was driving a 2009 Kia Rio, was traveling behind the school bus in the third lane of travel. Following the collision between the school bus and Ms. Ward’s vehicle, Ms. Harbin’s vehicle ran into and partially underneath the school bus. As a result of the accident, Ms. Harbin sought medical treatment for airbag and seatbelt burn, as well as for injuries to her left shoulder, back, and neck.
On September 28, 2011, Ms. Harbin filed suit against Ms. Ward and Ms. Ward’s automobile liability insurer, National Automotive Insurance Company.[1] Following trial, the trial court found Ms. Ward 100% at fault for causing the three vehicle wreck and the subsequent injuries to Ms. Harbin. In assessing all fault for the accident against Ms. Ward, the trial court reasoned:
In the present case [Ms. Ward] attempted to traverse three lanes of traffic without control lights or signs at which time [Ms. | sWard] was struck by a bus. This unexpected course of events gave [Ms. Harbin] little or no time to respond to the hazardous condition enveloping the roadway. Unable to avoid colliding with the bus, [Ms. Harbin] was put in the precise situation as contemplated by the Sudden Emergency Doctrine as it relates to the following driver statute. *217 Further, as established above, it was the negligence of [Ms. Ward], rather than [Ms. Harbin], that was the proximate cause of the hazardous condition. Therefore, the Sudden Emergency Doctrine shields [Ms. Harbin] from any allocation of fault rendering [Ms. Ward] solely liable for the resulting damages.
Ms. Ward and her insurer, National Automotive Insurance Company, were cast in judgment, in solido, for $18,068.14, plus judicial interest from the date of demand.
Ms. Ward and National Automotive Insurance Company (hereinafter collectively referred to as “National Automotive”) have appealed, assigning the following as error:
1. The trial court erred in determining that Ms. Ward’s actions precipitating the first accident excused Ms. Harbin’s fault for the subsequent rear-end collision.
2. The trial court erred in applying the Sudden Emergency Doctrine to excuse Ms. Harbin from liability for her own negligence.
3. The trial court erred in not considering the comparative fault of Ms. De-latte and in not finding Ms. Delatte was comparatively at fault.
4. The trial court erred in not reducing special and general damages based upon the intervening accident and two-month setback.
DISCUSSION

Liability

In reviewing a trial court’s findings of fact, appellate courts employ a “manifest error” or “clearly wrong” standard of review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. Id. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id. However, if a trial court |4applies incorrect principles of law and such errors are prejudicial, the appellate court is required (if it can) to render judgment on the record applying the correct law and determining the essential material facts de novo. Rideau v. State Farm Mut. Auto. Ins. Co., 06-0894 (La.App. 1 Cir. 8/29/07), 970 So.2d 564, 571, writ denied, 07-2228 (La.1/11/08), 972 So.2d 1168 (citing Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 735).
For liability for damages to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries (the cause in fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of protection element); and (5) actual damages (the damage element). Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 275-76.
All motorists owe a general duty to observe what should be observed. Mart v. Hill, 505 So.2d 1120, 1123 (La. 1987). Additional duties arise depending on the motorist’s movements on the roadway in relation to other vehicles. Relevant hereto are the duties and presumptions associated with a motorist entering a highway and with a following motorist.
*218 First, LSA-R.S. 32:124 provides that the driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. The driver entering a highway has the primary duty to avoid a collision. Walley v. Vargas, 12-022 (La.App. 1 Cir. 9/21/12), 104 So.3d 93, 105. Unusual, extreme, and high care toward favored traffic is required of such a motorist under the case law. Id.
Second, with regard to the following motorist, the law has established a rebuttable presumption that a following motorist who strikes a preceding | ^motorist from the rear has breached the standard of conduct prescribed by LSA-R.S. 32:81A and is therefore liable for the accident.[2] Johnson v. Magitt, 12-0200 (La.App. 1 Cir. 9/21/12), 111 So.3d 11, 12. The rule is based on the premise that a following motorist whose vehicle rear-ends a preceding motorist either has failed in his responsibility to maintain a sharp lookout or has followed at a distance from the preceding vehicle which is insufficient to allow him to stop safely under normal circumstances. Johnson, 111 So.3d at 13. While a following motorist may assume that the vehicle in front is being driven with care and caution, he must drive at an appropriate speed and must maintain an interval between the two vehicles as would enable him to avoid a collision with the lead vehicle under circumstances which should be reasonably anticipated. Leonard v. Favaloro, 05-206 (La.App. 5 Cir. 10/6/05), 916 So.2d 1191, 1192, and Bertrand v. Henry, 01-348 (La.App. 3 Cir. 12/19/01), 815 So.2d 868, 871, writ denied, 02-0190 (La.3/28/02), 811 So.2d 945.
A following motorist, however, may rebut the presumption of negligence by proving that he had his vehicle under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances. Johnson, 111 So.3d at 13. The following motorist may also avoid liability by proving that the driver of the lead vehicle negligently created a hazard that he could not reasonably avoid (a sudden emergency). Id. However, the rule of sudden emergency cannot be invoked by one who has not used due care to avoid the emergency. Anderson v. May, 01-1031 (La.App. 5 Cir. 2/13/02), 812 So.2d 81, 86. The following motorist must exonerate himself from fault before he can completely avoid liability. Matherne v. Lorraine, 03-2369 (La.App. 1 Cir. 9/17/04), 888 So.2d 244, 246. Although the sudden emergency doctrine was developed when contributory negligence was a complete bar to recovery, our courts continue to apply the doctrine. Duzon v. Stallworth, 01-1187 (La.App. 1 |fiCir. 12/11/02), 866 So.2d 837, 858, writs denied, 03-0589, 03-0605 (La.5/2/03), 842 So.2d 1101, 1110. While the sudden emergency doctrine has not been subsumed by comparative fault, see Jefferson v. Soileau, 03-0541 (La.App. 1 Cir. 12/31/03), 864 So.2d 250, 253, writ denied 04-0594 (La.4/23/04), 870 So.2d 306, some courts have treated the defense of sudden emergency as one of the factual considerations used in assessing the degree of fault to be attributed to a party. See King v. State Farm Ins. Co., 47,368 (La.App. 2 Cir. 8/8/12), 104 So.3d 33, 38, and Manuel v. St. John the Baptist Parish Sch. Bd., 98-1265 (La.App. 5th Cir. 3/30/99), 734 So.2d 766, 769, writ denied, 99-1193 (La.6/4/99), 744 So.2d 632.
*219 National Automotive contends that the trial court did not apply the appropriate standard and burden of proof in evaluating Ms. Harbin’s comparative fault. National Automotive contends that in assessing Ms. Harbin with no liability for rear-ending the school bus, the trial court did not properly consider the presumption that a following driver is liable when she strikes the vehicle in front of her. National Automotive avers that Ms. Harbin did not establish that she was traveling at a safe distance behind the school bus, at a safe speed, and in a safe manner. Moreover, National Automotive contends that because Ms. Harbin’s view ahead was obstructed by the bus, she had to take extra care in case of an emergency. See Ly v. State Through Dept. of Public Safety and Corrections, 633 So.2d 197, 201 (La.App. 1 Cir.1993), writ denied, 93-3134 (La.2/25/94), 634 So,2d 835 (“[W]hen a preceding vehicle is obstructing a motorist’s view ahead, the motorist has a duty to leave sufficient space between himself and the preceding vehicle to stop in case of an unexpected hazard in the road ahead.”) National Automotive concludes that if Ms. Harbin were traveling attentively at a safe distance behind the school bus and at a reasonably safe speed, she could have stopped to avoid the accident.
At trial, Ms. Ward testified that when she was leaving the gas station and attempting to make a left hand turn, she did not see the school bus in the third 17lane of travel. After the accident, her vehicle was stopped directly in the path of the school bus. She indicated that she received a citation for her failure to yield.
Ms. Delatte, who was operating the school bus, testified that she was in a “moving lane of traffic that was traveling.” She indicated that “if there were any cars in front of me, they were many car lengths up.” She testified that the first time she saw Ms. Ward’s vehicle was when “[i]t was peering out from the cars that were stopped and moving across.” Ms. Delatte testified that there was no way that she could have avoided the accident.
Ms. Harbin indicated that on the morning of the accident, South Range Avenue was “[v]ery busy” and road construction had started in the area. Ms. Harbin testified that she was “[r]oughly around two car lengths”[3] behind the school bus and she had sped up to a rate of speed between 30 and 35 miles per hour. She indicated that she sped up because she could see the traffic light ahead had turned green. She also testified that the bus had also sped up and was traveling “about 35 plus an hour.” She testified that she was unable to see vehicles coming out of the gas station, which was to her right, due to the traffic in the two lanes to the right of her vehicle. Ms. Harbin also admitted that she did not see the bus hit Ms. Ward’s vehicle and that the bus “just stopped instantly in front of my face.” In her deposition, Ms. Harbin indicated that when she saw the brake lights of the bus, “I was already — there was no way of stopping my car,” and that she slammed on her brakes “right when she was hitting the bus.”
The trial court found Ms. Ward was solely at fault for the accident. In cutting between ears in two lanes, attempting to cross a third lane and enter a fourth, Ms. Ward clearly breached the duty she owed under LSA-R.S. 32:124.
The trial court also found that Ms. Ward’s actions afforded Ms. Harbin “little or no time to respond to the hazardous *220 condition” on the roadway and applied the sudden emergency doctrine to Ms. Harbin. While the trial court | ^applied the sudden emergency doctrine, it did not specifically address whether Ms. Harbin met the burden, which was on her as the following motorist, to establish that she exercised due care to avoid the accident. In this regard, given the traffic, one should expect that a lead vehicle, especially a school bus that might block Ms. Harbin’s view, might be required to make a sudden stop. Although Ms. Harbin saw the brake lights of the bus, she indicated that “there was no way of stopping my car” and slammed on her brakes about the same time her vehicle struck the bus. Under these circumstances, we conclude that Ms. Harbin breached the duties owed by a following motorist by not keeping a proper lookout for the traffic ahead of her and failing to maintain a safe distance from the bus. Accordingly, because Ms. Harbin breached the duties owed by the following motorist, we conclude that the trial court committed manifest error in failing to apportion any fault to her.[4]
After an appellate court finds manifest error in the apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively that is reasonably within the trial court’s discretion. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607, 609-11. Considering the factors set forth in Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985),[5] the lowest percentage of fault reasonably within the trial court’s discretion that could have been assessed against Ms. Harbin is 25%.

Damages

Uln its fourth assignment of error, National Automotive contends that the trial court, in awarding damages, did not consider Ms. Harbin’s subsequent motor vehicle accident on December 1, 2010. National Automotive notes that the second accident was significant enough to require Ms. Harbin to replace her rear bumper. National Automotive also avers that Ms. Harbin produced a separate billing package from the same provider for each accident. The medicals for the December accident reflect a two-month span of treatment, through January 18, 2011, while the accident at issue reflects treatment through May 8, 2011. Moreover, at trial, Ms. Harbin admitted that the second wreck did set her treatment back. National Automotive concludes that Ms. Harbin’s recovery for both general and special damages should be reduced by 2/5, representing the two months of treatment she received for the December accident.
*221 A trial court’s award of special damages is subject to the manifest error standard on appeal, and its award of general damages is reviewed under the abuse of discretion standard. Webster v. Ballard, 05-2247 (La.App. 1 Cir. 3/2/07), 961 So.2d 13, 15. With regard to special damages, it appears that the trial court did not award Ms. Harbin any medical specials that she correlated to the second accident. The trial court awarded Ms. Harbin $3,945.00 for her medical expenses, $735.00 which represents her initial treatment at Denham Springs Urgent Care on October 28, 2010, and $3,210.00 which represents her treatment at Anthon Chiropractic Care from November 9, 2010 through November 30, 2010 and again from January 18, 2011, through May 12, 2011. The $1,157.00 in medical specials from Anthon Chiropractic Care which Ms. Harbin related to the second accident is not included in the total awarded by the trial court. Considering the foregoing, we cannot conclude that the trial court manifestly erred in its award of medical specials.
The trial court also awarded Ms Harbin $13,000.00 in general damages. We note that the trial court was aware that Ms. Harbin was involved in two accidents, and she was cross-examined in detail regarding how her injuries were affected by the second accident. Vast discretion is accorded the trier of fact in Infixing general damage awards. LSA-C.C. art. 2324.1. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exereise of discretion by the trier of fact. Youn, 623 So.2d at 1260. Following our review of the record, we cannot conclude that the trial court abused its discretion in its award of general damages. Assignment of error number four is without merit.
CONCLUSION
For the foregoing reasons, the May 1, 2013 trial court judgment is amended to assign 25% of the fault to plaintiff, Leah Harbin, and to reduce the damage award in proportion to her fault, from $18,068.14 to $13,551.11. Costs of this appeal are to be split between the parties.
JUDGMENT AMENDED, AND AFFIRMED, AS AMENDED.

. Ms. Harbin also filed suit against her uninsured/underinsured motorist carrier, Garrison Property and Casualty Insurance Company, but that claim was dismissed with prejudice on June 7, 2013.

. Louisiana Revised Statutes 32:81A provides: The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.

. Ms. Harbin had previously testified in her deposition that she was unsure how many car lengths she was behind the school bus.

. National Automotive also contends that the trial court did not consider the comparative fault of Ms. Delatte, the school bus driver, in failing to see what she should have seen and in failing to take more prompt action to avoid the collision. National Automotive asserts that the record evidence establishes that had comparative fault been considered, the fact-finder would be clearly wrong in failing to assign some degree of fault to Ms. Delatte. However, following our review of the record, we find no manifest error in the trial court not assessing Ms. Delatte with any fault.

. In determining percentages of fault, the trier of fact must consider both the nature of the conduct of all parties and the extent of the causal relationship between the conduct and the damages claimed. The factors that may influence the degree of fault assigned include: (I) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances that might require the actor to proceed in haste without proper thought. Watson, 469 So.2d at 974.