BOLIN, Judge.
Sherman U. Robles, accompanied by his wife and their minor son, was driving the family car north on U.S. Highway 71 when his vehicle collided with a large truck-trailer unit driven by Truman V. Horton, owned by Producers Interstate Corporation and insured by Commercial Standard Insurance Company. Suit for damages was instituted by Mr. Robles, individually and on behalf of the minor, and by Mrs. Robles. From judgment awarding a total of $3593 in favor of plaintiffs all defendants appeal. Plaintiffs have neither appealed nor answered the appeal.
Appellants specify the lower court erred on the question of liability. Since quantum is not made an issue in this court we shall direct our attention solely to the question of fault.
The transcript of testimony reflects the brief reasons why the trial judge found the accident was caused by the negligence of Horton. It was his finding the truck driver had entered a main highway from a private driveway without having first ascer *629 tained the entrance could be made in safety, and that in so doing he had breached the duty imposed upon him by law.
While there is some conflict in the testimony, we have experienced little difficulty in making our findings of fact. On July 4, 1969, Mr. Robles was driving his Chevrolet automobile north on a main highway from his home in New Orleans en route to Fort Worth, Texas. At about 12:30 a. m., approximately nine miles north of Cou-shatta, Louisiana, he approached a crossroad with an overhanging electric caution light. The light was located at the crest of a hill from whence the highway descended downgrade for northbound traffic. Robles testified he slowed his vehicle to approximately forty miles per hour as he went under the traffic light, and shortly thereafter increased his speed to approximately forty-five miles per hour.
About this same time Horton, who resided approximately two-tenths of a mile north of the intersection on the east side of Highway 71, was in the process of driving a truck-trailer unit onto the highway with the intention of turning left and proceeding south. The night was dark but the weather was clear. The truck had an overall length of sixty feet, the tractor portion being twenty feet and the trailer forty feet. Horton was familiar with the road and knew the distance from his driveway to the crest of the hill. He said he drove his truck to a position near the entrance of the highway and looked in both directions before entering. He also testified he requested his father-in-law, Mr. Lucas, to “lead him” out into the highway by the use of a two-cell flashlight. He then began slowly to enter the highway at a speed not in excess of five miles per hour. As he turned the tractor portion of the unit to the left, with the intention of proceeding south, the Robles vehicle came over the crest of the hill, at which time the entire trailer portion of Horton’s truck was blocking the northbound lane of traffic. Horton said he did not remember whether his headlights were burning on bright or dim, but there were clearance lights on the trailer. The man with the flashlight said he had positioned himself in the northbound lane when he saw the Chevrolet coming and attempted to flag him down. Both Lucas and Horton testified the rear wheels of the trailer were extending only about one and one-half feet east of the center line at the time of the collision. The trailer had been moved to the shoulder of the highway to avoid further accidents before the investigating officer arrived.
A somewhat different version of the accident is given by Robles. He testified that after he crested the hill he saw the truck lights facing him in the southbound lane of traffic and assumed it was moving toward him in a normal manner. He said he did not see any lights on the trailer nor did he see a man with a flashlight. He first saw and realized the trailer was blocking his traffic lane when he was only about one hundred twenty-five feet from it. He applied his brakes but was unable to avoid striking the left rear wheel of the trailer. The investigating state trooper testified there were skid marks which were entirely within Robles’ proper traffic lane.
After a careful review of the entire record we are uncertain whether the man was using a flashlight at the scene of the accident. Robles testified he heard the man say he had to go into the house to get the flashlight after the accident. If he was present just prior to the collision he was stationed not more than twenty feet south of the private driveway and was so near the headlights of the truck as to be unnoticeable to oncoming motorists. We are satisfied the trailer was at least partially blocking the northbound lane of traffic at the time of the collision. There was some testimony by Horton and his father-in-law that the Chevrolet was exceeding the speed limit, but on cross-examination they each admitted they were not sure about this. We are of the opinion Robles was not driving his car more than fifty-five miles per hour and there was no evi *630 dence that this was in excess of the speed limit.
Our determination of the question of fault depends upon the proper application of the controlling statute to the recited facts. Louisiana Revised Statute 32:124 provides:
“The driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision, and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.” (Emphasis added)
In applying the cited statute to the facts of this case the crucial question is whether Horton entered the highway at a time when he knew or should have known he was thereby created a hazard to motorist approaching from his left. One reason for the enactment of the Louisiana Highway Regulatory Act was to insure the free and safe flow of traffic on our modern and congested highways. In interpreting the statute now under consideration our courts have repeatedly held a driver entering a highway from a private driveway has the primary duty to avoid a collision. See West v. Ryder Truck Lines, Inc., (La.App. 3 Cir. 1969), 218 So.2d 106; Joseph v. Boudreaux, (La.App. 1 Cir. 1970), 230 So. 2d 352. This duty becomes more onerous as the hazards multiply and requires a motorist to use every reasonable means available to ascertain his entry onto the highway may be made in safety.
We find Horton guilty of negligence which was the sole and proximate cause of the accident. In determining fault or negligence, all of the surrounding circumstances must be taken into consideration. Horton, being familiar with the highway and the gradual incline from the entrance of his driveway to the crest of the hill, is charged with knowing that a virtual trap was created by his maneuvering a sixty-foot truck-trailer unit at night across the highway in the manner in which he did. In an effort to justify this action, counsel for appellants argue Robles had ample time and opportunity to see the obstruction in his path in order to avoid the accident. We cannot agree with this contention. A motorist has a right to assume that no unusual objects will appear in his traffic lane. Robles was not driving at an excessive rate of speed and had no obligation to slow down merely because he saw the lights of an oncoming vehicle in the opposite traffic lane. It is common knowledge that as a motorist goes over the crest of a hill the lights of an approaching vehicle, though they may not blind a driver, make objects in his lane of travel more difficult to see. We are convinced Robles acted as a prudent driver even though he failed to see the trailer until he was too close to avoid the collision.
The question might well be posed: What other actions could the truck driver take? Phrasing it another way: Is not this court in effect holding the only way the accident could have been avoided was for Horton to “stay at home”? Suffice it to say Horton knew the dangers of entering the highway at night in the manner in which he did. Perhaps he should have sent a flagman to the crest of the hill or taken any other action which would have allowed a reasonable driver to utilize the main highway in a lawful manner without having an accident.
Counsel for appellants in brief before this court cites Johnston v. Bituminous Casualty Corporation, (La.App. 2 Cir. 1964), 169 So.2d 726, and Zager v. Allstate Insurance Company, (La.App. 3 Cir. 1968), 211 So.2d 744, to substantiate his contention that Horton acted reasonably by looking both ways before driving his truck onto the highway. The cited cases are factually distinguishable from the instant case; in both Johnston and Zager the en *631 try into the favored thoroughfare was made during daylight hours; defendants had observed approaching traffic and had successfully entered the proper lane of travel when they were struck from the rear; it was established that the drivers on the favored streets had seen the entering motorists hut had failed to slow their vehicles until too late. Additionally, it was held the drivers emerging from private driveways were free of negligence since they made observation of traffic and entered at a time when it would be apparent to reasonable, prudent drivers they could do so in safety.
For the reasons assigned the judgment appealed from is affirmed at appellants’ cost.