SUMMERS, Justice.
Addis Simon brought this suit to recover against Guy P. Thibodaux, for damages, ■injuries and loss of wages he suffered as a result of a collision between his automobile and the sugar cane truck-trailer owned by Thibodaux. Wilton T. Hebert, employee of Thibodaux and driver of the truck at the time, and Southern Farm Bureau Casualty Insurance Company, Thibodaux’s liability insurer, were also made defendants.
On November 21, 1971 at approximately 5:30 o’clock in the morning Simon was driving his 1968 Ford two-door automobile in a northerly direction on Louisiana Highway No. 1, having just left Raceland headed for Thibodaux. He was traveling about 55 miles per hour, within the speed limit prescribed at that location. It was dark and his lights were burning. Sunrise on this day was at 6:30 a. m. Although he testified that a haze enveloped the road, impairing visibility to some slight degree, this testimony is not corroborated by other witnesses.
When Simon rounded a curve and his headlights again beamed on the road, he soon saw the large trailer loaded with sugar cane across his path in the road. He applied his brakes, skidded 46 feet and crashed into the rear of the trailer.
Just prior to the collision, as was Hebert’s custom, he arrived at defendant Thi-bodaux’s house to drive the truck-trailer loaded with sugar cane to the sugar refinery near the city of Thibodaux. The truck-trailer assembly was 46 feet long and 8 feet wide. With its load of sugar cane, it then weighed 48,680 pounds. While he was in the yard of Thibodaux’s house he walked around the truck trailer to inspect the lights and tires. He then entered the truck and drove along the private drive to *466 ward the highway. Because the highway was higher than the driveway, it was necessary to negotiate an incline as the truck-trailer neared the highway. As he approached the highway, but before entering, Hebert brought the truck-trailer to a stop about 20 feet from the highway and waited for oncoming traffic to go by. One car from the north and two from the south passed. He then proceeded in low gear onto the highway and turned left, heading in a northerly direction toward the city of Thibodaux.
The lengthy, heavily loaded truck-trailer moved slowly as it maneuvered into the right or north-bound lane of the highway. Due to its length and slow speed, however, Hebert had not completed the turning maneuver when Simon arrived at the point where the collision occurred. As Simon approached the truck the trailer was at an angle in the arc of the turn. Although it was principally in the right-hand lane, a part of the trailer had not yet cleared the western or south-bound lane. Simon could not avoid colliding with the trailer because he could not turn into the left or southbound lane on this narrow 20-foot highway.
This conclusion is supported by the damaged right rear of the trailer and the damaged left front of Simon’s Ford. In addition, the State Police Trooper who investigated the accident testified that Simon’s car remained in his right or north-bound lane. The damage, then, was not due to Simon’s attempt to turn to the right to avoid hitting the trailer as defendants contend. They argue that Hebert had completed the turning maneuver and was proceeding northward entirely in the right or north-bound lane. Thus the damage to Simon’s left front, and their right rear, could only result from Simon’s attempt to turn to the right in his effort to avoid the accident. The physical facts do not support the contention.
Although all lights on the truck and trailer were shining at the time of the collision, the truck’s headlights were obscured from drivers approaching from the rear by the bulk of the trailer and its load of sugar cane. The rear lights of the trailer were to some extent also obscured from drivers approaching from the rear by the angle of the trailer during the turning maneuver and the further fact that its rear lights were recessed somewhat in protective shields or hoods. These permitted full view by a driver directly behind the trailer, but the shields partially obscured the lights from drivers approaching at an angle.
The dark, the limited light on the rear of the trailer, the fact that the trailer edged into the traveled highway from a private driveway at a slow rate of speed at a point about 758 feet north of the curve which Simon rounded just before the collision, considered together, satisfy the Court that the driver of the truck was responsible for creating a dangerous situation to travelers approaching from the south by obstructing the highway an unreasonable length of time when his lights would not provide proper warnings.
Although the greater part of the testimony in this record concerns defendants’ attempt to establish that Simon was intoxicated at the time, neither the trial court nor the Court of Appeal found this to be a fact. Nor did they find that he was rendered incapable of driving properly by the small amount of alcoholic beverage he had consumed during the preceding ten hours. A review of the record supports this conclusion.
The duty of care imposed upon the driver of the truck-trailer is contained in the Highway Regulatory Act, and, so far as it is pertinent here, requires that “The driver of a vehicle about to enter ... a highway from a private road, driveway, alley or building . . . shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.” La.R.S. 32:124.
The facts of this case considered in the light of this statute, undoubtedly support a *467 finding that Simon was approaching “so close as to constitute an immediate hazard.” Perhaps with a faster and lighter vehicle, the maneuver from the private driveway onto the highway could have been accomplished before any vehicle could reach the point of impact from beyond the curve, but, quite obviously, this was not so where the entry onto the highway was being attempted by this heavily loaded truck-trailer slowly emerging from a private drive and ascending an incline from a dead stop in order to negotiate the entry.
The length of the truck-trailer assembly also added to the time needed to bring the entire assembly into the right-hand or north-bound lane of travel, in order that its hooded lights could be fully seen by a vehicle approaching from the rear in that same lane.
These combined circumstances, together with the clear duty imposed by the quoted statute and standards of reasonableness and ordinary care, convince us that the driver of the truck-trailer did not use the proper precautions to prevent this accident. Due to the serious consequences of highway accidents involving fast moving vehicles on busy highways, the duty to obey the rules of the road becomes more onerous as hazards multiply. Without prescribing every precaution which should have been taken in this case, we do say that every reasonable means available should have been used to ascertain that the entry onto the highway could be made in safety.
For instance, it could be said that safety should require that a flagman with a light be posted to warn travelers rounding the curve below the driveway, or, perhaps, special lighting should have been installed on the trailer’s sides to warn approaching vehicles while the trailer was at an angle during its turn into the highway. Robles v. Horton, 247 So.2d 628 (La.App.1971). Or, more importantly, Hebert should have obeyed the Highway Regulatory Act and not used the highway with this overloaded truck-trailer until thirty minutes after sunrise. La.R.S. 32:388.
In our view, the trial judge correctly found this to be an accident caused by entry of a truck onto a highway from a private drive under circumstances which made it impossible for the truck to complete its entry and turn onto the highway in sufficient time to avoid endangering oncoming traffic in the dark. Simon was not guilty of contributory negligence, and since we conclude that the truck-trailer operator was negligent, Simon should recover.
The award of the trial judge for the damages, medical expense, loss of wages and pain and suffering, which he itemized, in the sum of $17,118.70, plus the expert fee for a medical expert have been carefully reviewed. We do not find them to be seriously contested, and approve the awards.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and the judgment of the trial court is reinstated and made the judgment of this Court.