*512
 
 GASKINS, J.
 

 Iiln this two-vehicle collision case, the plaintiff/driver and his plaintiff/passenger both appeal from a trial court judgment that assessed the plaintiff/driver with 85 percent fault and the defendant/driver, whose log truck obstructed the favored road while entering from a private road, with only 15 percent fault. We amend the trial court judgment and, as amended, affirm.
 

 FACTS
 

 On October 24, 2006, Garold Wayne Burdine, age 19, was driving a 1991 Ford Ranger pickup truck south on Woolworth Road in Caddo Parish. The area is rural and lacks street lighting. Burdine was accompanied by his 16-year-old girlfriend, Lauren Duos. L.C. Robertson was driving a loaded log truck for his employer, Bed-sole Wood Corporation (“Bedsole”). As Robertson pulled onto Woolworth Road from a private road, heading south, his truck obstructed both sides of Woolworth Road. Burdine’s truck struck the trailer portion of the log truck. Both he and his passenger were injured. Robertson was cited for failure to yield while entering from a private drive; he pled guilty and paid a fine.
 

 On October 9, 2007, Burdine and Ms. Duos’ mother, acting on behalf of her minor daughter, filed suit against Robertson, Bedsole, and Bedsole’s alleged auto insurer, Zurich American Insurance Company (“Zurich”). In their answer, the defendants stated that Empire Indemnity Insurance Company was the correct name of their insurer; Zurich was subsequently dismissed from the suit by the plaintiffs. The defendants also asserted that fault by Burdine caused the accident and that the plaintiffs had failed to 12mitigate their damages. In April 2009, Ms. Duos, no longer a minor, filed an amended petition against Burdine and his insurer, Allstate Insurance Company (“Allstate”), alleging, in addition to the claims pertaining to Robertson made in the original petition, that the accident was also caused by Burdine’s negligence.
 

 Bench trial was held on March 25, 2010. Prior to trial, Ms. Duos settled her claims against Burdine and his insurer, Allstate. Trial testimony was given by both plaintiffs and the deputy sheriff who investigated the accident. Also testifying were Robertson and two independent witnesses to the accident. At the conclusion of the testimony, the matter was taken under advisement.
 

 On April 8, 2010, the trial judge gave oral reasons for judgment in open court. He assessed fault of 85 percent to Burdine and 15 percent to Robertson. The judge observed that both plaintiffs and the deputy sheriff testified that the accident occurred after darkness fell while Robertson and the two independent witnesses indicated that it was just before dark and that there was some visibility. The judge found evidence of some inattentiveness on Burdine’s part, noting Ms. Duos’ testimony that they were engaged in a discussion as they approached the log truck. However, the court also found that Robertson was negligent in not using warning signs when pulling out onto the road as he knew that his vehicle would completely obstruct the road. Damages of $39,941.88 ($30,000 in general damages plus her medical bills) were awarded to Ms. Duos and $37,985.71 ($25,000 in general damages plus his medical bills) to Burdine; these | .^amounts were subject to 85 percent reduction. The court assessed 85 percent of the court costs incurred by the defendants to Burdine, while the defendants were assessed with 15 percent of the court costs incurred by Burdine
 
 *513
 
 and Ms. Duos. Judgment was signed May 4, 2010.
 

 Both Burdine and Ms. Duos appealed.
 

 LAW
 

 An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Cole v. Department of Public Safety & Corrections,
 
 2001-2128 (La.9/4/02), 825 So.2d 1134;
 
 Stobart v. State through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993). To reverse a fact finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong.
 
 Stobart, supra.
 

 Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
 
 Cole, supra; Rosell v. ESCO,
 
 549 So.2d 840 (La.1989).
 

 After an appellate court finds a clearly wrong apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to |4the highest or lowest point respectively which is reasonably within the trial court’s discretion.
 
 Clement v. Frey,
 
 95-1119 (La.1/16/96), 666 So.2d 607.
 

 As to the allocation of fault, the trier of fact is bound to consider the nature of each party’s wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed.
 
 Watson v. State Farm Fire and Casualty Insurance Co.,
 
 469 So.2d 967 (La.1985);
 
 Fontenot v. Patterson Insurance,
 
 2009-0669 (La.10/20/09), 28 So.3d 259.
 

 In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4)the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
 
 Watson v. State Farm Fire and Casualty Insurance Co., supra.
 

 An appellate court must give great deference to the allocation of fault as determined by the trier of fact.
 
 Fontenot v. Patterson Insurance, supra; Clement v. Frey, supra.
 
 The allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and any allocation by the fact finder ■within that range cannot be clearly wrong.
 
 Fontenot v. Patterson Insurance, supra.
 
 Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award.
 
 Fontenot v. Patterson Insurance, supra; 5Schysm v. Boyd,
 
 45,-336 (La.App.2d Cir.8/16/10), 47 So.3d 977,
 
 writ denied,
 
 2010-2113 (La.11/19/10), 49 So.3d 390.
 

 If a motorist fails to see what he should have seen, the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen.
 
 Fontenot v. Patterson Insurance, supra.
 

 La. R.S. 32:124 provides:
 

 
 *514
 
 The driver of a vehicle about to enter or cross a highway from a private road ... shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.
 

 TRIAL TESTIMONY
 

 The accident occurred on Woolworth Road, which is a two-lane blacktop road running north and south; there are no streetlights in the area where the instant collision occurred. The witnesses described the accident as happening at the bottom of a hill just past Walnut Hill Elementary School. A motorist driving south on Woolworth Road would pass Walnut Hill Elementary School before heading down the hill. At the bottom of the hill, there is a ditch on the west side of the road; there is no improved shoulder in this part the road. Just south of the accident site is a bridge. The speed limit in this area is 55 mph. The log truck was entering the roadway from a private log road on the east side of Woolworth Road. In order to go south, the log truck had to make a left-hand turn. Due to the size of the road and the truck, this maneuver required Robertson, the log truck driver, to cross both lanes, stop when he reached the edge of the west side of |fithe road, back up, and then turn again. If he did not back up, the truck would begin to go down into the ditch on the west side of the road.
 

 Visibility at the time of the accident was an issue at trial. According to information introduced from the U.S. Naval Observatory, sunset on the day of the accident occurred at 6:32 p.m. and the end of civil twilight was at 6:57 p.m. The trial testimony of the witnesses as to visibility and the time of the accident varied greatly. Burdine and Ms. Duos said it was dark when the collision occurred. The deputy sheriff testified that he received the call about the accident at 7:30 p.m. and that he arrived at the accident scene at 7:34 p.m. His estimated time for the collision was 7:27 p.m. He testified that it was dark when he arrived at the scene and he needed a flashlight to see while conducting his investigation.
 

 Robertson testified that the collision occurred as the sun was going down behind the trees and that it was not dark at that point. However, he also testified that it was dark when he put his warning signs and flares out about five to 10 minutes after the accident. Furthermore, Robertson admitted that it was dark when the police arrived. George Rainer, a southbound driver who witnessed the accident and called 911, agreed that it happened on “the edge of darkness.” In his written statement to the police, he gave the accident time as around 7:20 p.m. He testified that he was already calling 911 as he stopped at the accident site; a few minutes later, Burdine asked him to call his parents. Although the 911 call did not show up on Mr. Rainer’s phone bill because it was not a billable call, the phone bill showed that the call to Burdine’s parents was placed at 7:23 p.m. 17Rainer testified there was enough daylight left that he was able to avoid the log truck and he believed that the Burdine pickup should have been able to do the same. Michael Pennywell, another southbound driver who saw the accident, said he was sure it was daylight; he was uncertain of the time but had thought it could have been as early as 4:30 p.m. He also testified that the pickup truck had ample opportunity to stop before hitting the log truck.
 

 Burdine and Ms. Duos also testified that they both could see lights at the bottom of the hill. As they continued down the road, they discussed the lights and concluded that there was possibly a disabled car on the side of the southbound lane. Both were aware that there was a deep ditch on
 
 *515
 
 the west side of the road that would have prevented such a vehicle from pulling all the way off the road. Burdine acknowledged that he was aware that there was a bridge close to where he saw the lights. Burdine reduced his lights from high beam to low beam so as not to blind the motorist he was approaching. Burdine, who testified that he was going 50 to 55 mph in a 55 mph zone, stated that he slowed down to between 40 to 45 mph, and moved into the northbound lane to pass what he perceived to be a stalled vehicle. He admitted that Ms. Duos told him to slow down and be careful. Ms. Duos testified that Burdine only slowed from 55 mph to 50 mph. The young couple also testified that immediately before the accident they were engaged in conversation.
 

 Rainer testified that Burdine passed him shortly before the accident and that Bur-dine was perhaps going 65 mph. Penny-well, who admitted to a 2008 drug possession conviction, testified that Burdine also passed him; |8while he was unsure of Bur-dine’s speed, Pennywell was able to say that he was going 60 mph when Burdine passed him.
 

 DISCUSSION
 

 The overwhelming objective evidence indicates that the accident occurred at approximately 7:20 p.m. At this time, it was dark enough to require the use of headlights to drive safely. Both vehicles involved in the accident were utilizing their headlights. Robertson testified that the trailer had some lights on it, as well as lights on the back of the trailer; however, given the position of the trailer, Burdine was unable to see the lights on the back of it. Burdine did testify that he could see hazard lights blinking on the back of the truck itself as he approached the collision site. Additionally, Rainer, one of the independent witnesses, noted that the lights at the bottom of the hill appeared “weird” and “awkward”; this put him on alert as he approached.
 

 Applying the
 
 Watson
 
 factors to the instant matter, we note that the log truck driver, Robertson, had an awareness of the danger caused by his actions in obstructing the entire road as he entered from a logging road. The length of his vehicle and the narrowness of the road required him to perform a complicated maneuver to enter the roadway. This maneuver required care and could not be completed as quickly as driving a regular truck onto the road. The risk created by Robertson’s conduct was great, especially considering the diminished visibility. His capacity was certainly superior, not inferior, to that of Burdine, and there were no extenuating circumstances requiring him to proceed hastily and without thought. As noted by the trial |3court, he could have utilized safety measures in achieving his entry onto the roadway.
 

 Based upon our review of the facts of this case, we find that a greater degree of fault must be attributed to Robertson, a professional driver. The accident occurred at twilight in an area surrounded by tall trees which further darkened the area. Robertson indicated that he had been working in the area for about a month and that they would leave the work site at about 6:00 p.m. because of the loss of daylight. The log truck traversed the road in such a manner that its lights failed to clearly reveal to oncoming traffic that the vehicle was perpendicular to the roadway. Even though he knew that he was required to perform a dangerous turn to get onto the road, Robertson made no attempt to warn motorists that he was blocking both lanes of traffic.
 

 On the other hand, Burdine had a lesser degree of fault. He was aware that there were some activity involving another vehi-
 
 *516
 
 ele — possibly stalled or disabled — at the bottom of the hill. He also knew that there was a deep ditch on the west side of the road that would have compromised the ability of the driver to safely remove such a disabled vehicle completely from the roadway. He further admitted that he realized that there might even be occupants of the vehicle standing in the roadway outside of it. Another factor is that Burdine realized that there was a bridge a short distance beyond the area where he observed the lights; knowledge of the location of this bridge should have inspired greater caution on Burdine’s part. While he reduced his speed to a small degree and moved over into the | innorthbound lane to pass what he assumed to be a stalled car, he failed to exercise sufficient caution and vigilance by slowing down more significantly. Had he done so, this youthful driver would have had an increased ability to react once he approached and more accurately perceived the peril that lay in his path.
 

 Our careful review of the record demonstrates that the trial court was manifestly erroneous in its allocation of fault. Therefore, we are obliged to adjust the percentages of fault. We raise the assessment of fault against Robertson from 15 percent to the lowest percentage which is reasonably within the trial court’s discretion, or 60 percent. Correspondingly, we lower Bur-dine’s percentage of fault from 85 percent to 40 percent.
 

 CONCLUSION
 

 The judgment of the trial court is amended to raise the percentage of fault assessed against L.C. Robertson from 15 percent to 60 percent and to lower the percentage of fault assessed against Ga-rold Wayne Burdine from 85 percent to 40 percent. The costs awarded in the lower court are amended in accordance with these percentages. As amended, the trial court judgment is affirmed. Costs of this appeal are assessed to the defendants.
 

 AMENDED AND, AS AMENDED, AFFIRMED.