McClendon, j.
li-The defendants appeal a judgment, which was rendered in accordance with a jury verdict, to challenge the percentage of fault allocated to a plaintiff involved in motor vehicle accident. Plaintiff also appeals, challenging the trial court’s denial of his motion for judgment notwithstanding the verdict and/or additur on the issue of damages. For the following reasons, we affirm.
*1034 FACTS AND PROCEDURAL HISTORY
This case involves a motor vehicle accident that occurred on March 10, 2010 at approximately 5:30 a.m., while still dark, on Lobdell Highway. Lobdell Highway is a four-lane divided highway, in Port Allen, Louisiana. The portion of Lobdell at issue is straight and level, without any hills or curves. Leroy Edmond, who was driving a GMC Sierra pickup truck, was traveling in a northerly direction on Lobdell Highway when he struck a flat bed trailer that was being pulled by an eighteen wheeler driven by Sherbaston Wilson. The cargo on the flatbed trailer was completely covered by a black tarp. Mr. Wilson was leaving a truck stop and attempting to make a left hand turn across the two northbound lanes of Lobdell. At the time of the impact, Mr. Wilson’s trailer had not cleared the inner northbound lane of travel.
Subsequently, Mr. Edmond filed suit against Mr. Wilson, his employer, Jowin Express, Inc., and their insurer, Cherokee Insurance Company, (collectively “defendants”).[1] Mr. Edmond alleged that Mr. Wilson was negligent in, among other things, “fail[ing] to yield to oncoming traffic while exiting from a private driveway.” Mr. Edmond also alleged that he sustained permanent injuries in the accident.
The matter proceeded to a jury trial. Following trial, the jury returned a verdict, assessing 95% fault for the accident to the defendants and the remaining 5% fault to Mr. Edmond. The jury also rendered the following damage award in favor of Mr. Edmond:
JsA. Past Medical Expenses $35,000
B. Future Medical Expenses $150,000
C. Past lost Wages ■ $450,000
D. Future lost Wages $400,000
E. Past pain, suffering, mental anguish, disability, scarring and disfigurement $75,000
F. Future pain, suffering, mental anguish, disability, scan’ing and disfigurement $110,000
Loss of Enjoyment of Life $15,000 P
Property Damage $20,000. K
The trial court signed a judgment in accordance with the jury verdict on October 18, 2013.
Mr. Edmond then filed a motion for judgment notwithstanding the verdict (JNOV) and/or additur, which was subsequently denied by the trial court on January 7, 2014. Following the denial of the JNOV and/or additur, the defendants filed a petition for suspensive appeal on January 31, 2014. In their appeal, defendants assign the following as error:
1. The finding that Sherbaston Wilson was 95% at fault was manifestly erroneous, because the evidence showed that Plaintiff-Appellee, Leroy “Mike” Edmond had the last clear chance to avoid the accident.
*1035 2. It was manifest error for the jury to consider Plaintiff-Appellee’s economist’s range for future lost wages because that expert admitted on the stand that the bases for his calculations were incorrect. As a result, the range offered to the jury by Plaintiff-Appellee for this element of damages created inaccurate parameters that the jury should not have considered.
Mr. Edmond also filed an appeal on March 10, 2014. In his appeal, he assigns the following as error:[2]
The trial court erred in failing to appropriately apply La. C.C.P. Art[.] 1811 and/or La. C.C.P. 1814, in denying plaintiff-appellant’s Motion for JNOV and/or Additur for the awards for: future los[t] wages; past pain, suffering, mental anguish, disability, scarring and disfigurement; and, future pain, suffering, mental anguish, disability, scarring and disfigurement.
Defendants answered Mr. Edmond’s appeal, seeking review of a judgment rendered by the trial court on April 14, 2014, relative to taxing of costs.
J^DISCUSSION

Allocation of Fault

In their first assignment of error, the defendants contend that the jury committed manifest error in assigning Mr. Edmond only five percent of the fault because Mr. Edmond had plenty of time to avoid the accident.
At trial, Mr. Edmond testified that on the morning of the accident, he was driving home from work. Prior to the accident, Mr. Edmond had stopped at a red light on Lobdell Highway about 1500 feet south of the truck stop. Mr. Edmond testified that he was the middle vehicle in a line of three vehicles in the right lane that had stopped at the red light. After the light turned green and the line of traffic approached the truck stop, Mr. Edmond testified that the driver of the vehicle in front of him tapped his brakes, so Mr. Edmond moved over into the left lane. Mr. Edmond indicated that he was unaware that the 18 wheeler’s trailer was protruding into the left lane when he changed lanes. Mr. Edmond believed the lane was empty due, in part, to seeing headlights from oncoming traffic traveling southbound on Lobdell Highway. Mr. Edmond testified that after he moved over into the left lane he could see reflectors, but it was dark of night and the top of the trailer was black. Mr. Edmond also indicated that when he saw the trailer, he hit his brakes but he could not avoid hitting the left rear corner of the flatbed trailer.
On cross-examination, Mr. Edmond acknowledged that he had eye problems, but testified that it had no impact on his ability to see the trailer. Specifically, Mr. Edmond had cataracts and .had been diagnosed with Stargardt’s Disease, which decreases peripheral vision and decreases vision in poor lighting conditions. Mr. Edmond had previously complained to an eye specialist of problems .with night driving and light adjusting. A few months prior to the accident, a progress note in the medical records of Dr. Lionel Smith, who treated plaintiff for his eye problems, indicates that plaintiff was “thinking about disability.” However, Mr. Edmond denied he was ever considering retiring.
*1036 |sMr. Wilson testified that when he was leaving the- truck stop, he looked to his left and to his right and believed he had enough time to make a left turn to proceed south on Lobdell Highway. Mr. Wilson also testified that he never stopped after he began his initial movement across the northbound lanes, but he could not speed up his turn because of the vehicles traveling in the southbound lanes of travel.
Mr. Wilson noted that he had been to this particular truck stop on many occasions. Mr. Wilson also admitted that there was an alternate route to exit the truck stop where he could enter Lobdell Highway at a traffic light, thereby avoiding crossing over two lanes of oncoming traffic, but that it is quicker to exit out of the truck stop’s front entrance. Mr. Wilson acknowledged that he had used the alternate route on prior occasions.[3]
Michael Gillen, defendants’ accident reconstruction expert, testified that the trailer had reflective conspicuity tape its full length, rear quarter lights on the side, and that it met all Department of Transportation requirements. Mr. Gillen opined that it took Mr. Wilson almost fourteen seconds to complete his turn, that when Mr. Wilson’s truck entered the edge of the highway Mr. Edmond’s truck was 500 feet away, and that Mr. Wilson was within one second of completing his turn and clearing the left northbound lane when Mr. Edmond struck his trailer. Mr. Gillen opined that the accident could have been avoided had Mr. Edmond applied his brakes instead of swerving. Mr. Gillen indicated that there were no pre-impact skid marks found.
On cross-examination, Mr. Gillen admitted that because Mr. Wilson was in the process of completing his turn, the reflective properties of the conspicuity tape, which is most effective at a 90-degree angle, were reduced. Mr. Gillen also indicated that the cargo on the trailer, which he recognized had no reflective value, would not have given Mr. Edmond any warning of the trailer’s presence.
|fiOn appeal, defendants contend that since it took 14 seconds for Mr. Wilson’s rig to cross the highway, there was ample time for Mr. Edmond to see the rig regardless of whether there was another vehicle in front of him. Defendants assert that Mr. Edmond simply failed to see what he should have seen. As such, defendants conclude that the fault apportioned to Mr. Edmond should be raised.
On the other hand, Mr. Edmond contends that Mr. Wilson breached a duty of reasonable care by attempting to make a left turn across multiple lanes of a busy highway when it was unsafe to do so, thereby obstructing the favored roadway. Mr. Edmond asserts that the evidence adduced at trial fails to establish that he should have noticed the trailer in time to avoid the accident. Mr. Edmond avers that despite his eye problems, he had driven the exact same route for over twenty-five years without incident, and he had not been involved in a motor vehicle accident since his early twenties, roughly forty years prior to trial. Accordingly, Mr. Edmond concludes that the jury’s fault apportionment was not clearly wrong.
It is well settled that we must give great deference to the allocation of fault as determined by the trier of fact. Fontenot v. Patterson Ins., 09-0669 (La.10/20/09), 23 So.3d 259, 274. The allo *1037 cation of fault is within the sound discretion of the trier of fact and will not be disturbed on appeal in the absence of manifest error. Great West Cas. Co. v. State ex rel. Dept. of Transp. and Development, 06-1776 (La.App. 1 Cir. 3/28/07), 960 So.2d 973, 977-78, writ denied, 07-1227 (La.9/14/07), 963 So.2d 1005. If the jury’s findings are reasonable after reviewing the record, we cannot reverse those findings even if we may have decided differently had we been sitting as the trier of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Comparative negligence is determined by the reasonableness of the party’s behavior under the circumstances. Smith v. Jack Dyer & Associates, Inc., 633 So.2d 694, 699 (La.App. 1 Cir.1993). As to the allocation of fault, the trier of fact is bound to consider the nature of each party’s wrongful conduct and |7the extent of the causal relationship between that conduct and the damages claimed. Watson State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, 469 So.2d at 974.
All motorists owe a general duty to observe what should be observed. Mart v. Hill, 505 So.2d 1120, 1123 (La.1987). Additional duties arise depending on the motorist’s movements on the roadway in relation to other vehicles. Relevant hereto are the duties and presumptions associated with a motorist entering a highway and a driver on a favored street toward an intruding motorist.
Louisiana Revised Statutes 32:124 provides that the driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. The driver entering a highway has the primary duty to avoid a collision. Harbin v. Ward, 13-1620 (La.App. 1 Cir. 5/29/14), 147 So.3d 213, 218. Unusual, extreme, and high care toward favored traffic is required of such a motorist under our jurisprudence. Harbin, 147 So.3d at 218.
Conversely, the duty of the driver on the favored street toward the intruding motorist is the much-lesser ordinary care, and that driver generally may rely on the assumption or presumption that those vehicles entering the roadway from less-favored positions such as a private drive will not drive into the path of favored traffic. Walley v. Vargas, 12-0022 (La.App. 1 Cir. 9/21/12), 104 So.3d 93, 105. Nevertheless, even a favored driver can still be found negligent if his substandard conduct contributed to the cause of the accident. Walley, 104 So.3d at 105.
| «Applying the Watson factors to this case, we note that the tractor trailer driver, Mr. Wilson, had an awareness of the danger caused by his failure to clear the roadway prior to oncoming vehicles passing the northbound lanes near the truck stop. The risk created by Mr. Wilson’s conduct was great, given the diminished visibility. Moreover, Mr. Wilson’s capacity as a truck driver was superior, not inferior, to that of Mr. Edmond, and there were no extenuating circumstances requiring him to proceed hastily and without thought. In fact, Mr. Wilson acknowl *1038 edged that there was an alternate route where he could enter Lobdell Highway at a traffic control signal, but Mr. Wilson chose to proceed with a left turn across a four-lane divided highway while it was still dark.
Our jurisprudence has recognized the danger posed when vehicles attempt to cross favored thoroughfares in the- dark. Although each case is fact specific, several courts have placed sole liability on tractor-trailer drivers in cases where the tractor-trailer cannot be seen until the vehicle on the favored thoroughfare is too close to avoid the collision. See Robles v. Horton, 247 So.2d 628, 630-31 (La.App. 2 Cir.1971), Simon v. Thibodaux, 323 So.2d 465, 467 (La.1975), Miller v. Hartford Insurance Company, 567 So.2d 823, 826 (La.App. 3 Cir.1990). By contrast, liability will be placed on the driver on the favored thoroughfare when he is aware that something is in the roadway, has time to avoid the collision, and fails to act accordingly. See Burdine v. Robertson, 46,213 (La.App. 2 Cir. 5/18/11), 69 So.3d 510, 515-16.
While defendants posit that Mr. Edmond should have seen the tractor trailer earlier, defendants’ expert acknowledged that the reflective properties of the conspi-cuity tape were diminished leading up to the collision. He also acknowledged that the cargo atop the trailer would not have been visible and would not have placed Mr. Edmond on notice. Further, Mr. Edmond saw oncoming lights from vehicles traveling in the southbound lanes, so he believed nothing was in the lane of travel being occupied by the trailer. Additionally, it was undisputed that the vehicle in front of Mr. Edmond had to take evasive action by tapping his brakes in an apparent attempt to avoid hitting the trailer. laAlthough we may have apportioned the fault differently, we cannot conclude the jury’s allocation of fault was manifestly erroneous. Accordingly, defendants’ first assignment of error is without merit.

Damages

General damages are intended to compensate an injured plaintiff for mental or physical pain and suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle. See Thongsavanh v. Schexnayder, 09-1462 (La.App. 1 Cir. 5/7/10), 40 So.3d 989, 1001, writ denied, 10-1295 (La.9/24/10), 45 So.3d 1074. They are inherently speculative in nature and cannot be fixed with mathematical certainty. Miller v. LAMMICO, 07-1352 (La.1/16/08), 973 So.2d 693, 711.
By contrast, special damages, which include medical expenses and lost wages, are those which have a “ready market value,” such that the amount of the damages theoretically may be determined with relative certainty. McGee v. A C And S, Inc., 05-1036 (La.7/10/06), 933 So.2d 770, 774. A reviewing court should not set aside an award of special damages unless the award was based on factual findings that are found to be manifestly erroneous. See Kaiser v. Hardin, 06-2092 (La.4/11/07), 953 So.2d 802, 810.

Judgment Notwithstanding the Verdict and Additur

Mr. Edmond filed a JNOV as authorized by LSA-C.C.P. art. 1811, for the trial court to review the jury’s awards for future lost wages and for past and future pain, suffering, mental anguish, disability, scarring and disfigurement. Mr. Edmond asserted that the jury’s awards in these respects were inadequate.
A JNOV may be granted on the issue of liability or on the issue of damages or on both. LSA-C.C.P. art. 1811(F). A JNOV is warranted when the facts and inferences point so-strongly and *1039 overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the 110mover. Marroy v. Hertzak, 11-0403 (La.App. 1 Cir. 9/14/11), 77 So.3d 307, 316. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Marroy, 77 So.3d at 316. When a JNOV is denied, the appellate court simply reviews the record to determine whether there is legal error or whether the trier of fact committed manifest error. McCrea v. Petroleum, Inc., 96-1962 (La.App. 1 Cir. 12/29/97), 705 So.2d 787, 791-92.
Mr. Edmond contends that the trial court applied the incorrect standard in deciding the JNOV. Specifically, Mr. Edmond references the following statement by the trial court at the hearing on the motion: “if I had tried this case myself I would not have come up with these numbers, okay.” The trial court went on to state: “I am usually very reluctant to second guess a jury because they compromise on certain things, they come up with other things. I’m just reluctant to change a verdict when we’re just talking about things that are not cut and dry, per se, and I’ve got to get in the minds of jurors.” Mr. Edmond submits that if the trial court would not have awarded the figures awarded by the jury, then it was obligated to grant the JNOV. We disagree. The trial court simply restated the reasonable juror standard and determined that reasonable jurors could arrive at a contrary verdict. As such,- the trial court applied the correct standard.
Further, for the reasons expressed more particularly below, we cannot conclude that the trial court manifestly erred in denying Mr. Edmond’s JNOV. Moreover, because defendants did not consent to an additur in lieu of a new trial, we do not address the issue of additur on appeal. See LSA-C.C.P. art. 1814.

Future Lost Wages

In their second assignment of error, defendants contend that the jury erred in considering Mr. Edmond’s economist’s range for future lost wages |nbecause that expert admitted on the stand that the bases for his calculations were incorrect. In a related assignment of error, Mr. Edmond contends that the jury’s award for future lost wages was inadequate.[4]
Mr. Edmond was 56 years old at the time of the accident and 60 years old at the time of the trial. Following the accident, Mr. Edmond, who had been employed as an operator at BASF Corporation for 34 years, was not able to return to BASF because the employer could not accommodate restrictions that were placed on Mr. Edmond by his treating physicians. At trial, both parties presented testimony of economists and vocational rehabilitation experts to address the issues of Mr. Edmond’s loss of earning capacity and whether Mr. Edmond could return to work in any capacity.
*1040 Stephanie Chalphen, a vocational rehabilitation consultant hired by Mr. Edmond, testified that Mr. Edmond can perform sedentary to light-duty work. However, Ms. Chalphen recognized that there were no jobs in the market where Mr. Edmond could earn what he was earning as an operator. Ms. Chalphen indicated that Mr. Edmond had the potential to earn between $9.00 and $12.00 per hour, but he may have difficulty finding a position because he is at a competitive disadvantage on the labor market given his physical limitations, injuries, the market in which he lives, the non-transferability of work experience as a plant operator, and being on pain medication. Moreover, Ms. Chal-phen noted that Mr. Edmond had a real estate license, but opined that she did not believe he could earn money as an agent given that he had only performed at a “very, very low level where he never made significant money.”
Similarly, Bob Gisclaire, a licensed vocational rehabilitation counselor hired by the defendant, testified that Mr. Edmond could earn between $11.38 and $14.17 per hour performing light-duty work. Mr. Gisclaire also testified that he believed Mr. Edmond was capable of succeeding as a real estate agent, and the median income for a real estate agent in the parish where he resides is $23.03 |12per hour. Mr. Gis-claire indicated that it certainly would not be easy for plaintiff to earn the median income as a real estate agent, but he considered employment as a real estate agent a good retirement job to have.
Dr. Pat Culbertson, an economist hired by Mr. Edmond, testified that if Mr. Edmond could not return to work in any capacity, his future lost wages, based upon the amount he was earning at BASF at the time of his injury, and discounted to present value would total $703,408.00. Dr. Culbertson’s figure assumed that Mr. Edmond would not retire until he was 66.2 years old, or roughly 6 years from the date of trial. Dr. Culbertson based Mr. Edmond’s work-life expectancy on estimates provided by the United States Department of Labor. Dr. Culbertson also opined that Mr. Edmond had additional economic loss of realtor earnings, employer benefits including health insurance and dental insurance, and household services. Dr. Culbertson indicated that plaintiffs entire economic loss (minus his past lost wages) for his employment at BASF, for his employment as a realtor, and for household services totaled $888,089.00.[5] Dr. Culbertson, although he had not previously considered Mr. Edmond’s potential earning capacity, testified that if he accepted that Mr. Edmond could earn $12.00 per hour performing light-duty work, it would reduce his numbers by roughly $25,000.00 per year, or 21.8 percent.
By contrast, Dr. Roy Womack, an economist hired by the defendants, performed two calculations — one with Mr. Edmond retiring at 64.2 years old, in accordance with tables published by the Bureau of Labor Statistics, and the other with plaintiff retiring at 66 years of age to qualify for full social security benefits. Dr. Wom-ack testified that if Mr. Edmond retired at 64.2 years of age, or 3.93 years from trial, and assuming no return to the labor force, his lost wages would total $535,476.00— $513,841.00 for loss of earnings from BASF plus $21,635.00 for loss of realtor earnings. Dr. Womack indicated that if Mr. Edmond could |1sperform light-duty work and earn $11.23 per hour, a figure *1041 derived from Mr. Gisclaire’s report, Mr. Edmond’s loss of future earnings would total $489,111.00. Dr. Womack further opined that if Mr. Edmond could earn $20.24 per hour (presumably as a real estate agent), Mr. Edmond’s loss of future earnings would total $361,798.00. According to Dr. Womack, Mr. Edmond’s future lost wages through age 66, or 5.75 years post-trial, coupled with loss of realtor earnings would total $797,787.00 (assuming plaintiff could not return to work in any capacity).
In their second assignment of error, the defendants contend that the jury erred to the extent it relied upon the calculations of future lost wages by Dr. Culbertson, Mr. Edmond’s expert economist. Defendants aver that Dr. Culbertson failed to take into account any information provided by Mr. Edmond’s rehabilitation expert, Stephanie Chalphen, who testified that Mr. Edmond has some residual earning capacity. As such, defendants assert that Dr. Culbertson’s range of $888,089.00 — $1,112,-416.00 for future lost wages should not have been considered by the jury. Rather, they assert that the appropriate range is between $361,793.00 and $654,216.00.
We find no merit in this perplexing argument. The jury’s award of $400,000.00 in future lost wages is on the lower end of the defendants’ suggested range and is within the range proposed by defendants’ expert, Dr. Womack. This suggests that the jury may not have even considered Dr. Culbertson’s figures in rendering its award.[6] Therefore, we find no merit in defendants’ second assignment of error.
In a related assignment of error, Mr. Edmond contends that the jury’s award of $400,000.00 in future lost wages was based on hypothetical employment possibilities that were not realistically available.
| j4Awards for loss of future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Therefore, the trier of fact is given much discretion in fixing these awards. Hollenbeck v. Oceaneering Intl., Inc., 96-0377 (La.App. 1 Cir. 11/8/96), 685 So.2d 163, 175, writ denied, 97-0493 (La.4/4/97), 692 So.2d 421. Where a conflict in the evidence exists, and neither party presents evidence that is wholly inconsistent, implausible on its face, or unbelievable in light of objective evidence, the appellate court must defer to the fact finder’s decision unless that, decision is manifestly erroneous or clearly wrong. Henderson v. Nissan Motor Corp., 03-606 (La.2/6/04), 869 So.2d 62, 71.
Both vocational rehabilitation consultants recognized the possibility that Mr. Edmond could return to. work in some capacity and provided the jury, as well as the economists, with Mr. Edmond’s earning potential. Moreover, there was evidence in the record to suggest that Mr. Edmond would retire before he reached the age of 67. The jury apparently considered these issues in rendering its award, which falls within the range suggested by Mr. Gisclaire. Considering the foregoing, we cannot conclude that the jury’s award of future lost wages was manifestly erroneous. Mr. Edmond’s assignment of error in this regard is without merit.

General Damages

Mr. Edmond also contends that the jury’s damage award for past and future *1042 pain, suffering, mental anguish, disability, scarring and disfigurement was abusively low. Mr. Edmond avers that he suffered a low-back injury in the accident, including a 3.5 mm herniated disc that causes him to experience severe and debilitating low back and leg pain. Mr. Edmond notes that three years and six months elapsed from the time of the accident and the date of trial. Mr. Edmond also notes that between the accident and trial, he had undergone numerous rounds of physical therapy (manual and water), facet injections, a my-leogram, and neurological testing, only to be advised that he was a candidate for a temporary surgical fix by discectomy or the more invasive lumbar fusion 11flsurgery. Mr. Edmond notes that since the accident, his pain, as well as the restrictions placed on him by his physicians, have prevented him from returning to work.
Dr. Allen Johnston, plaintiffs treating orthopaedist, noted that Mr. Edmond had a disc herniation at L4-5, with pain radiating into his right leg. Dr. Johnston treated plaintiff conservatively, but indicated that Mr. Edmond continued to experience pain two years post-accident. Dr. Johnston opined that the chance of Mr. Edmond improving without surgery is “slim.” Dr. Johnston referred Mr. Edmond to Dr. Kelly Scrantz, a neurosurgeon.
Dr. Scrantz explained that Mr. Edmond is a candidate for two different surgeries— a discectomy or a fusion. Dr. Scrantz noted that while a discectomy is an option, it would not provide Mr. Edmond the same level of relief that a fusion could. Dr. Scrantz opined that a fusion might reduce Mr. Edmond’s pain between 70 and 75 percent. Dr. Scrantz indicated that without surgery, Mr. Edmond is “as good as he’s gonna get.” Even if a fusion surgery is successful, Mr. Edmond notes that his recovery would not be without limitations. Dr. Scrantz opined that Mr. Edmond’s disability rating following a fusion surgery would be approximately 20 percent.
Mr. Edmond contends that the jury’s awards of $75,000.00 in general damages for past pain, suffering, mental anguish, disability, scarring and disfigurement, and $110,000.00 for future pain, suffering, mental anguish, disability, scarring and disfigurement were an abuse of discretion. Mr. Edmond requests that these awards be raised to $275,000.00 and $810,000.00, respectively. Mr. Edmond has cited jurisprudence, which he asserts supports these higher awards.
Much discretion is left to the judge or jury in the assessment of general damages. LSA-C.C. art. 2324.1. The trier of fact is afforded much discretion in independently assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. Miller v. LAMMICO, 973 So.2d at 711. In reviewing an award of general | ^damages, the court of appeal must determine whether the trier of fact has abused its much discretion in making the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). There is no mechanical rule for calculating general damages, and reasonable persons frequently disagree about their measure in a particular case. See Youn, 623 So.2d at 1261. The discretion vested in the trier of fact is great, “even vast,” so that an appellate court should rarely disturb an award of general damages. Youn, 623 So.2d at 1261. it is only when the award is, in either direction, beyond that- which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id. Only after it is determined that there has been *1043 an abuse of discretion is a resort to prior awards appropriate, and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332, 335 (La.1976). In reviewing a general damage award, a court does not review a particular item in isolation; rather, the entire general damage award is reviewed for an abuse of discretion. Dennis v. The Finish Line, Inc., 99-1413 (La.App. 1 Cir. 12/22/00), 781 So.2d 12, 30, writ denied, 01-0214 (La.3/16/01), 787 So.2d 319.
Mr. Edmond has requested that we compare the damages award given in this case with prior awards given in other cases involving substantially similar injuries. However, the Louisiana Supreme Court has stated that it “disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case.” Youn, 623 So.2d at 1260. In this case, the jury awarded Mr. Edmond a total of $200,000.00 in general damages. Our role as an appellate court in reviewing general damages is not to decide what we consider to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. 117FoIlowing our review of the record, we are unable to conclude that the jury abused its vast discretion in rendering this award. Accordingly, Mr. Edmond’s assignment of error in this regard is without merit.

Defendants’ Answer to Plaintiffs Appeal

Defendants have answered the Mr. Edmond’s appeal, seeking review of the trial court’s April 14, 2014 judgment that taxed costs. The judgment taxing costs was rendered by the trial court after the October 18, 2013 final judgment on the merits and after the January 7, 2014 judgment denying Mr. Edmond’s JNOV and/or additur that Mr. Edmond appealed. A judgment for costs rendered after the final judgment on the merits is a separate and appealable judgment. Hoyt v. State Farm Mutual Auto. Ins. Co., 623 So.2d 651, 664 (La.App. 1 Cir.), writ denied, 629 So.2d 1179 (La.1993). Defendants cannot raise the subsequent cost judgment in an answer to Mr. Edmond’s appeal. See Hoyt, 623 So.2d at 664. Therefore, this issue is not properly before us.
CONCLUSION
For the foregoing reasons, the trial court’s October 18, 2013, judgment rendered in accordance with the jury verdict is affirmed. Additionally, the trial court’s January 7, 2014 judgment denying Mr. Edmond’s motion for JNOV and/or additur is affirmed. Each party is to bear their own appellate costs.
AFFIRMED.

. Mr. Edmond also named his uninsured/un-derinsured motorist carrier, State Farm Mutual Insurance Company, as a defendant. However, Mr. Edmond later dismissed State Farm from the suit.

. Mr. Edmond also filed an answer to defendants' appeal. However, Mr. Edmond did not brief the issues raised in his answer in his responsive brief to defendants’ appeal. Nevertheless, Mr. Edmond raised the same Issues in his own subsequent appeal. As such, the merits of these assignments will be addressed in Mr. Edmond’s appeal.

. Ron Ward, director of employer safety at Jowin Express, Inc., testified that he believes the alternate route was an unsafe road and would not recommend that his drivers take that route. Even so, Mr. Wilson acknowledged that he used the alternate route on prior occasions.

. The parties do not dispute the amount the jury awarded for Mr. Edmond’s past lost wages.

. Dr. Culbertson recognized that the salaries of other operators In positions comparable to Mr. Edmond had increased considerably since Mr. Edmond's injury. Dr. Culbertson testified that if Mr. Edmond would have experienced the same increase commensurate with those in comparable positions, his economic loss would total $940,735.00.

. Even so, Ms. Chalphen acknowledged that Mr. Edmond may not be able to obtain employment in a light-duty capacity. Dr. Culbertson simply provided the amount of future wage loss if the factfinder believed that Mr. Edmond, in accord with Ms. Chalphen’s testimony, could not secure employment and worked until he was 66.2 years of age. Dr. Culbertson acknowledged that if Mr. Edmond could return to work, then his recommended figures should be reduced by 21.8%.