jiTHIBODEAUX, Judge.
In this slip and fall ease, Wal-Mart, the defendant, appeals a judgment which awarded Stacie Rabalais $14,000.00 in general damages. Wal-Mart claims that the trial judge abused his discretion in concluding that Ms. Rabalais proved a lack of reasonable care on Wal-Mart’s part and that it had constructive knowledge of the condition causing the damage. It also claims the award of $14,000.00 is excessive.
For the following reasons, we affirm.

LAW AND DISCUSSION

A.Liability
The statutory provision, La.R.S. 9:2800.6, concerning Ms. Rabalais’s burden of proof and the merchant’s duty provides:
|2§ 2800.6. Burden of proof in claims against merchants
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
After a thorough review and evaluation of the record, we are convinced that the facts found and the oral reasons assigned by the trial judge are not manifestly erroneous *787 or clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). The trial judge made a credibility determination and gave little credit to the testimony of Ms. Pauline Lachney, the Wal-Mart employee responsible for sweeping the store’s floors. Ms. Lachney admitted that she did not remember anything that happened on August 24,1991, the date of the accident. Her testimony consisted of a description of her normal work-day routine. She was unable to testify as to what she did on the date of Ms. Rabalais’s accident. Mr. Steve Bellino, a co-manager at Wal-Mart, testified that he talked to Ms. Lachney and that she informed him that she had swept the area just prior to the accident. However, there was no documentation to support Ms. Lachney’s claim. Mr. Bellino admitted that Ms. Lachney could be confused.
| -(Wal-Mart introduced evidence of its safety procedures. These include: formation of safety committees that meet once a week to tour the store identifying anything that may present an unsafe condition; night cleaners who clean and mop the store every night; management by wandering, i.e., managers who walk around greeting customers and looking for problems; zone defense, where employees walk around their work areas to make sure things are not on the floor; safety sweeps, a person responsible for sweeping the whole floor cleaning up grit which can damage the waxed floor surface; safety training of its employees upon hiring as to what to do when they discover spills. Mr. Bellino also testified that it is everybody’s job to look out for unsafe acts and keep the aisles clear. Mr. Bellino also readily admitted that Wal-Mart abandoned the safety sweep documentation program due to the many problems it caused. Thus, there is no evidence that a safety sweep was conducted as Wal-Mart claims.
We note that these safety procedures are similar to those outlined in Davis v. Wal-Mart, Inc., 594 So.2d 557 (La.App. 3d Cir. 1992), where this court held the procedures to be “more than ‘reasonable’ ” and thus adequate to exculpate Wal-Mart from any liability in connection with the plaintiff’s accident. However, we also stated in Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3d Cir.1993), that:
“whether the protective measures taken by a merchant to keep premises free from hazards were reasonable, must be determined in light of the circumstances of each case, along with the risk involved, the merchant’s type and volume of merchandise, the type of display, the floor space utilized for customer service, the volume of business, the time of day, the section of the store and other such considerations.” (Citations omitted).
Thus, Saucier teaches that Wal-Mart’s safety procedures are not to be taken as a talisman of safety procedures that are reasonable under the statute in all such cases, but are to be scrutinized on a case-by-case basis.
JjApplying the Saucier considerations to the present case, we hold that Wal-Mart’s safety procedures were not reasonable. The accident occurred at 4:00 p.m. on a Saturday. The testimony revealed that except for Sunday, Saturday is the busiest day of the week. Furthermore, Mr. Bellino testified that at 4:00 p.m., an employee shift change occurs. Mr. Bellino further testified that not only is Saturday one of the store’s busiest days of the week, but that the aisle where the slip and fall occurred, the paper goods and household chemical department, is one of its busiest. Additionally, the substance on the floor was a light-green color. Mr. Arthur Vercher, a customer who came to the assistance of Ms. Rabalais, testified that although he did not see the substance when he first passed through the aisle nor when he returned to the aisle to assist Ms. Rabalais, he felt something sticky under his feet upon his return. Thus, the substance was not easily seen. Moreover, the one employee assigned to that department had only been working at that Wal-Mart in the paper goods and household chemical department for about five months. Mr. Cuoung Winnberry was in the process of making a list of items to be stocked, retrieving those items and stocking the shelves with those items before the accident and at the time of the accident. Therefore, although Wal-Mart’s safety procedures were found to be reasonable in the Davis case, supra, un *788 der the circumstances of this case, they were not.
As to Wal-Mart’s actual or constructive knowledge of the substance being on the floor, the trial judge found that it is conceivable that, because liquids are displayed in that area on shelves, there may be leakage. Further, Mr. Winnberry had been away from the aisle where the accident occurred for at least forty minutes and there is no indication as to when the area was last swept. Since Mr. Winnberry claims that there was nothing on the floor when he first |Bwent through the aisle and all parties agree that there was something on the floor of the aisle at the time of the accident, the trial judge found that the spill had been there long enough to cause Wal-Mart to have constructive knowledge of its existence. We agree.
B. Quantum
Dr. Robert Rush, a family practitioner limited to occupational medicine, treated Ms. Rabalais approximately sixteen times from September of 1991 through April of 1993, except during the period of time when she was pregnant. Dr. Rush testified that Ms. Rabalais suffered a sacroiliac injury which presented both objective and subjective signs of continued disability. Dr. Rush stated that a sacroiliac injury could last a year or two and that sacroiliac patients persistently have problems for an indefinite period of time. In describing Ms. Rabalais’s sacroiliac injury, Dr. Rush explained that the body, once it perceives an injury or defect in the sacroiliac, tries to brace itself. The piri-formis (the muscle that turns the thigh outward), the quadratus-lumbrum (the loin muscles) and the iliac-psoas (the hip bone muscles) go into a tightened or heightened activity in order to physiologically splint the injured hemi-pelvis (half of the pelvis). Therefore, the pain Ms. Rabalais is suffering is a physiological response of the body to the sacroiliac injury. Dr. Rush further testified that Ms. Rabalais could achieve a pain-free state but, while engaging in an activity as simple as walking, she could twist her body the wrong way, re-injure her sacroiliac and suffer sudden, severe pain.
Wal-Mart makes much of the fact that Ms. Rabalais did not regularly attend the physical therapy sessions prescribed by Dr. Rush. However, Dr. Rush and Ms. Rabalais explained that she missed sessions due to her transportation problems. Apparently, the trial judge found that explanation credible and we find no error in his finding. We further Isfind that the trial judge did not abuse his great discretion by awarding Ms. Rabalais $14,000.00 in general damages. See, Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).

CONCLUSION

For the above reasons, the judgment of the trial court is affirmed with costs to be taxed against the defendant-appellant, Wal-Mart of Alexandria.
AFFIRMED.