705 So.2d 787 (1997)
Sherri McCREA
v.
PETROLEUM, INC., d/b/a Race Trac.
No. 96 CA 1962.
Court of Appeal of Louisiana, First Circuit.
December 29, 1997.
*788 Robert McComiskey, Metairie, for plaintiff/appellant Sherri McCrea.
Alton Lewis, Hammond, for defendant/appellee Petroleum, Inc. d/b/a Race Trac.
Before FOIL, WHIPPLE and KUHN, JJ.
WHIPPLE, Judge.
This case involves a slip and fall accident in which plaintiff claimed she was injured by falling in spilled oil on defendant's premises. Plaintiff, Sherri McCrea, appeals the judgment of the trial court, rendered in accordance with the jury's verdict that plaintiff's injuries did not result from any negligence of defendant, Petroleum, Inc., d/b/a Race Trac. We affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
On Easter Sunday, April 11, 1993, McCrea had visited her parents in Mississippi and had stopped at her sister's house. On her way home to Pumpkin Center, Louisiana, she stopped at around 4:30 P.M. at the Race Trac convenience store and gas station in Hammond to buy gas. After she pulled up to the pumps and pumped gas into her car, she turned to put the gas cap back on her car. She contends she slipped and fell in a dinner-plate-sized puddle of oil, and landed on her hands and knees, with one leg extended. She went in to pay for her gas purchase and contends she told two employees that there was an oil spill by the pumps, which they needed to clean up because it had caused her to fall. As she was driving home, she felt excruciating pain in her right leg.
She went back to Race Trac with her sister on the Tuesday after the accident and asked to speak to a manager to report the accident. She and the manager went outside to the pump area and she showed him where she had fallen. Shortly thereafter, she went to *789 see her internist, Dr. Gaber. An orthopedist and a neurosurgeon subsequently treated McCrea for a bulging lumbar disc, which all of the doctors related to the April 11, 1993 slip and fall accident described by plaintiff.
Plaintiff filed suit against defendant and after a jury trial held on December 5-8, 1995, the jury returned a verdict in favor of defendant, finding that defendant was not negligent in maintaining its premises. This appeal followed.

ANALYSIS
Plaintiff complains on appeal that the trial court erred in failing to charge the jury with plaintiff's proposed instructions. Instead, the trial court charged the jury by reading the applicable statute, LSA-R.S. 9:2800.6, as amended in 1990 by Acts 1990, No. 1025, Sec. 1, effective September 1, 1990. The statute reads as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive knowledge of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
Plaintiff also argues that the trial court erred in failing to grant a JNOV at plaintiff's request.
At trial, plaintiff specifically objected to the trial court's failure to charge the jury that a merchant has a duty to have in place mandatory periodic inspection procedures, as articulated in Welch v. Winn-Dixie, 94 2331 (La.5/22/95); 655 So.2d 309, overruled, White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081. Plaintiff also objected to the court's refusal to give plaintiff's requested jury charges based on a distinction the court drew between supermarket slip and falls and self-service gas station slip and falls. In response to plaintiff's objection, the trial court stated:
"[B]asically I refused all specially requested instructions, pertaining to slip and fall law at least.... It's the opinion of the court that in this particular case, unlike other tort cases, the law is [LSA-R.S.] 9:2800.6, that the legislature has promulgated that as being the law and that is the law that applies to slip and fall cases. No more. No less. To me it's kind of a unique situation in tort law.... It's kind of like a criminal case. If you violate the statute you're guilty, and if you violate the slip and fall law you're guilty.... The law is the statute. No more. No less. That's just the position I'm going to take on this case."
At trial, plaintiff argued that Welch v. Winn-Dixie had effectively amended LSA-R.S. 9:2800.6, to impose a lesser burden of proof than was provided in what the Welch court called a "decidedly pro-defendant" statute. Citing Judge Parro's concurring opinion in Welch v. Winn-Dixie, 92 2372 (La. App. 1st Cir. 8/22/94); 645 So.2d 647, writ granted, 94-2331 (La.11/29/94); 646 So.2d *790 390; reversed, 94 2331 (La.5/22/95), 655 So.2d 309, plaintiff argued that the burden of proof set forth in the statute regarding constructive notice is impossible to overcome because there is no way to prove how long a substance was on the floor.
In Welch, the Supreme Court held that it was "unnecessary to show precisely how long the [slippery substance, i.e., the cooking oil] was on the floor due to its nature as extremely slippery and hazardous and the lack of established consistent inspection procedures designed to discover such a dangerous condition." Thus, the plaintiff in Welch met the statute's burden of proof for constructive notice by proving that Winn-Dixie had failed to have in place a "uniform, mandatory, non-discretionary clean-up and safety procedure." Welch, 94 2331 at p. 17; 655 So.2d at 318. At trial and on appeal, plaintiff argues that the trial court's failure to charge the jury with her proposed instructions resulted in a tainted jury verdict.[1]
We disagree and find no merit in these arguments. At the outset, we note that in White v. Wal-Mart Stores, Inc., 97-0393, p. 5 (La.9/9/97), 699 So.2d at 1085, the Supreme Court held that LSA-R.S. 9:2800.6, as it read in 1991, clearly and unambiguously requires that a plaintiff prove each of the enumerated requirements of section (B). Sub-section (B)(2) requires that plaintiff establish that the merchant created or had actual or constructive notice of the condition prior to the occurrence. Constructive notice, as defined by sub-section (C)(1), includes a temporal element, and the statute does not allow for the inference of constructive notice absent some showing of this temporal element. Thus, the Supreme Court concluded, under the clear wording of the statute, the plaintiff is required to prove that the condition existed for some time period prior to the fall, and the statute simply does not provide for a shifting of the burden to the defendant merchant to make a positive showing of the absence of the existence of the condition prior to the fall. White, 97-0393 at p. 5, 699 So.2d at 1085. Additionally, the Supreme Court opined that the plaintiff's burden regarding constructive notice is not an "impossible burden," contrary to the argument similarly urged by the plaintiff herein. White, 97-0393 at pp. 5-6, 699 So.2d at 1085-1086.
In Welch, the Supreme Court had concluded that the plaintiff had carried her burden of proving constructive notice by showing the absence of written inspection procedures or written documentation of inspections performed and the lack of a consistent inspection policy. White, 97-0393 at p. 4, 699 So.2d at 1084. Thus, the Court's decision in White overruled the Court's prior holding in Welch, which had (a) allowed for a finding of constructive notice absent any showing by plaintiff that the condition had existed for some period of time prior to the *791 occurrence, and (b) had provided for a shifting of the burden to the defendant merchant to prove it exercised reasonable care. White, 97-0393 at pp. 6-7, 699 So.2d at 1085-1086. Considering this jurisprudence, we find no merit in plaintiff's argument that the trial court erred in failing to charge the jury that a merchant has a duty to have in place mandatory periodic inspection procedures, as had been articulated in Welch.
Additionally, we note that the trial court is required to instruct the jurors on the law applicable to the cause submitted to them, pursuant to LSA-C.C.P. art. 1792(B). In a jury trial, the judge has a duty to charge the jury as to the law applicable in a case and the correlative right and responsibility to require that the jury get only the correct law. It is the judge's responsibility to reduce the possibility of confusing the jury, and he or she may exercise the right to decide what law is applicable to prevent counsel from arguing law which the trial judge deems inappropriate. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, p. 35 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 488, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094. The judge is not required to give the precise instruction submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case. A charge to the jury, even if it correctly states the law, must be based on evidence adduced in the case. A trial judge is not required to give a charge unless the facts support the giving of the charge. Adequate instructions are those instructions which fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Belle Pass Terminal, Inc., 92-1544 at p. 35-36; 634 So.2d at 488.
Here, the trial court gave general instructions on negligence and damages, and specific instructions on the law applicable to slip and fall cases. Contrary to plaintiff's assertion, the trial court's failure to specifically charge the jury with the additional language of the cases relied upon by plaintiff did not render the jury verdict invalid.
In addition to reading LSA-R.S. 9:2800.6, the trial court also instructed the jury that:
The determination of whether the protective measures have been reasonable is largely dependent upon a particular circumstances [sic] of each case. Taking into consideration the type of volume of the merchandise, the volume of business, and time of day, and other pertinent considerations. [sic] The degree of vigilance must be commiserate [sic] with the risks involved as determined by the above consideration.
The trial court informed the jury that a determination must be made on a case-by-case basis as to whether the defendant merchant exercised reasonable care in keeping the premises free of hazardous conditions. In White, the Supreme Court recognized that whether the period of time the condition existed is sufficiently lengthy such that a merchant should have discovered the condition is necessarily a fact question. White, 97-0393 at p. 5, 699 So.2d at 1085. Such a determination necessarily depends upon the particular circumstances of the case. Here, we find the trial court's instruction adequately explained the law.
The plaintiff also argues that the jury verdict against her should be set aside, and assigns error to the trial court's denial of JNOV. Plaintiff reiterates that reciting LSA-R.S. 9:2800.6 without instructing the jury on a merchant's duty to conduct frequent, periodic safety inspections, left her with an insurmountable burden of proof. Plaintiff did not separately brief the trial court's denial of JNOV, and defendant urges us to consider the issue abandoned on appeal. However, we find plaintiff's arguments on the other issues raised herein encompass this claim and were asserted in support of plaintiff's assertion that the trial court erred in denying JNOV. Thus, we shall address this assignment of error.
Louisiana Code of Civil Procedure article 1811 authorizes a party to move for JNOV, which motion was denied by the trial court herein. A JNOV can be granted only when the trial court finds that reasonable minds could not reach a contrary verdict, and the trial court can make no credibility *792 determinations nor draw inferences therefrom. When JNOV is denied, the appellate court simply reviews the record to determine whether there is legal error or whether the trier of fact committed manifest error. Autin's Cajun Joint Venture v. Kroger Co., 93 0320, pp. 9-10 (La.App. 1st Cir. 2/16/94); 637 So.2d 538, 544, writ denied, 94-0674 (La.4/29/94); 638 So.2d 224.
Our review of the record does not reveal legal error. As discussed above, the jury instructions given were adequate to inform the jury of the law. Moreover, the record does not reveal any manifest error by the trier of fact under the standard previously set forth in Welch, or as more recently articulated in White.
Ray East[2], a former manager of Race Trac, testified at trial on behalf of the plaintiff. East testified that the "Shift Manager/Associate Handbook" introduced into evidence by plaintiff was available on the computer for employees but was not distributed. The handbook included directives to employees to keep the station clear of empty containers, spilled oil, or other foreign substances which may cause a slip or a stumble. However, the shift manager's checklist, to be completed after the end of each shift, did not include any requirement to check for oil spills, according to East. He testified that there was no hourly policy to check for spills; the primary emphasis of the company was on controlling cash loss. He admitted that if an employee saw an oil spill, "it would be taken care of." He testified that he personally went outside every hour to take gasoline readings from the pumps, but that he did not check for oil spills at that time. If it was reported to an employee that there was an oil spill outside, the employee was "to see if the customer was okay. And never admit fault." East was on duty when plaintiff returned to Race Trac to report her accident, and went outside with her to see where she had fallen. He worked as manager of the Hammond store for about two and one-half months, until he was promoted to manager of a larger volume store, then to area supervisor. He was subsequently terminated from employment by Race Trac because one of the stores he supervised was deemed dirty and substandard in appearance by his employer.
Patty Naquin, a cashier who was working during the 3:00 P.M. to 11:00 P.M. shift at Race Trac the day of the accident, testified at trial that she was required to "check by the gas pumps for spills or anything." If there was an oil spill, employees put cat litter on the spill. In her previous deposition testimony, Naquin had stated that she could not remember if she went out to check for oil spills on the day of the accident, and that employees went out to inspect if business was slow. However, at trial she testified that "We always went out there. We had to.... [T]hat was our job." She did not remember plaintiff coming into the office.
Robert Carballo, a manager in training with Race Trac at the time of the accident, was also working that day, although he had left the premises by the time plaintiff claims to have fallen. He testified that management stressed the need to take care of oil spills, and that there was a continuous inspection throughout the store whenever anything was spilled on the floor.
Carolyn Cope, the regional manager for Race Trac in the Hammond area, testified that new employees were trained with a safety and emergency video, including training on cleaning and inspection of the premises. According to Cope, the store manager makes a daily inspection upon arriving at work, and when an employee comes on duty at the beginning of the shift, the employee follows the shift manager checklist in inspecting the store. During the shift, inspections are performed every hour inside and outside the store. This is an unwritten policy, but employees are trained to complete the inspections.
Keowanna Billings was working with Patty Naquin when plaintiff fell. Her video deposition testimony was introduced at trial. Billings *793 stated that every hour on the hour someone went outside to do cleanup. She remembered that plaintiff had come in the store and told them there was an oil spill outside, but plaintiff did not say she had fallen. She testified that Race Trac's procedures included checking to see if there were any oil or gas spills. She testified that since the new shift personnel came on at 3:00 P.M., the oil in which plaintiff fell could not have been present for very long, because it was her job to go outside and check for oil every hour.[3]
After reviewing the record, we cannot say that the trial court was clearly wrong in denying plaintiff's motion for a JNOV. Although the jury could have inferred from Ray East's testimony that no safety or inspection procedures were in place at the Hammond Race Trac store, other fact witnesses contradicted East's testimony. Additionally, the testimony of Billings provided a reasonable basis for the jury to conclude that the spill was non-existent or had not existed for a sufficient length of time that defendant should have been charged with notice of any alleged spill. As the trier of fact, the jury was entitled to discredit the testimony of Ray East, who had been fired from Race Trac, and to believe the testimony of the other employees working on the day of the accident.
In applying the standard for a JNOV, the trial court cannot weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. Belle Pass Terminal, Inc., 92-1544 at p. 42; 634 So.2d at 492. Our standard of review of the trial court's denial of the motion for JNOV herein is whether there was legal error or whether the trier of fact committed manifest error. Autin's Cajun Joint Venture, 93-0320 at p. 10; 637 So.2d at 544. Our review of the record reveals no legal or manifest error herein under either the standards set forth in Welch (which obligated defendant to affirmatively show its inspection procedures) or White (which recently held that plaintiff must prove that the condition existed for a sufficient period of time to establish notice, without shifting the burden to defendant).
Accordingly, the judgment of the trial court is affirmed. All costs are assessed to plaintiff.
AFFIRMED.
NOTES
[1] Plaintiff requested several jury charges, which were rejected by the trial court. The specific charges at issue on appeal are plaintiff's requested jury charges number 9, 11, 14, and 13, which provide, respectively:

(a) Self-service gas station employees should conduct more frequent inspections of the ground surface around the self-service gas pumps on busy days than on slower days to make sure there are no oil spills;
(b) Reasonable care may require regular period inspections of self-service areas as frequently as every five minutes, every ten minutes, or every 40 minutes, depending on the circumstances;
(c) The plaintiff does not have to prove exactly how long the oil spill had been there if Race Trac did not have a mandatory period inspection procedure in place to discover such a hazard; and
(d) If you find that Race Trac did not have a definite and systematic program for discovering hazardous oil spills by its gas pumps then you should find Race Trac unreasonable and give judgment for the plaintiff;
These proposed jury instructions were derived from Welch, Thompson v. Stalnaker's Restaurant, Inc., 93-1447 (La.App. 3rd Cir. 6/1/94); 640 So.2d 733, writ denied, 94-1799 (La.10/14/94); 643 So.2d 165, and Rabalais v. Wal-Mart of Alexandria, 94-24 (La.App. 3rd Cir. 6/1/94); 640 So.2d 785, writ denied, 94-1796 (La.10/14/94); 643 So.2d 164. In Thompson, the court found that plaintiff had proven constructive knowledge of a spilled substance which caused plaintiff to slip and fall by proving that on the busy night of the accident, no inspection procedures were followed in the restaurant. Thompson, 93-1447 at p. 5; 640 So.2d at 736-737. In Rabalais, the court found that under the facts of the case, Wal-Mart had constructive knowledge of the spill when plaintiff proved the last inspection before the accident was at least forty minutes before the accident. Rabalais, 94-24 at p. 4; 640 So.2d at 788.
[2] Ray East's name is spelled "East" in the transcript. However, in depositions taken of one of the Race Trac employees, Keowanna Billings, his name is spelled "Isce". We use the spelling "East" throughout this opinion.
[3] We note that Ray East's testimony contradicted this testimony. He testified that if Billings testified that she checked for oil spills on the lot every hour, he would say that she did not do so, although she was a good employee.