STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 CA 0675

DURELL BARNETT AND ERIC WASHINGTON

VERSUS

PATRICK WOODBURN AND LOUISIANA DEPARTMENT OF
TRANSPORTATION

Judgment Rendered: ___'APR 1 6 2021___

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket Number 2016-0002838

Honorable Charlotte H. Foster, Judge Presiding

*************

George R. Tucker          Counsel for Plaintiff/Appellee,
New Orleans, LA           Durell Barnett and Eric Washington

Jeff Landry               Counsel for Defendants/Appellants,
Louisiana Attorney General Patrick Woodburn and the Louisiana
Baton Rouge, LA           Department of Transportation and
                          Development

Amber Mandina Babin
New Orleans, LA

*************

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

WRC
by JEW Chutz, J. Concurs without reasons.

**WHIPPLE, C.J.**

Defendants, Patrick Woodburn and the State of Louisiana, through the Department of Transportation and Development, appeal a judgment entered in conformity with a jury's verdict, and plaintiff, Durell Barnett, appeals a judgment denying his motion for JNOV or alternatively, additur. For the reasons that follow, we affirm the judgments of the trial court.

## FACTS AND PROCEDURAL HISTORY

On May 25, 2016, at approximately 1:00 p.m., Durell Barnett and his passenger, Eric Washington, were traveling in a 1999 Silverado truck in the right lane of Hwy. 51, a four-lane highway, preparing to make a right turn into the driveway of a pawn shop in Hammond, Louisiana, when they were rear-ended by a bucket truck operated by Patrick Woodburn in the course of his employment with the State of Louisiana, through the Department of Transportation and Development ("DOTD"). Mr. Woodburn, who was also in the process of slowing down to make a right turn into the DOTD Hammond Facility, looked forward after checking his mirrors to see if any vehicles were behind him and noticed Mr. Barnett's vehicle approximately thirty feet in front of him. Mr. Woodburn applied his brakes, but he was unable to avoid a collision.

Mr. Barnett filed a suit for damages sustained as a result of the accident against Mr. Woodburn and the DOTD.[1] Following a three-day jury trial on July 9, 10, and 11, 2019, the jury returned a verdict finding Mr. Woodburn 80% at fault and Mr. Barnett 20% at fault. The jury further awarded Mr. Barnett damages, as follows:

| | |
|---|---|
| Past Medical Expenses | $10,000.00 |
| Future Medical Expenses | $50,000.00 |
| Past Pain and Suffering | $ 5,000.00 |

---

[1]The original and amended petitions herein were filed on behalf of Mr. Barnett and Mr. Washington. However, for reasons not entirely clear from the record, beginning with the filing of "Plaintiff's Requested Jury Charges" on August 23, 2018, Mr. Barnett is the only plaintiff referenced in the pleadings.

2

| | |
|---|---|
| Future Pain and Suffering | $ 35,000.00 |
| Past Loss of Income | $ 60,000.00 |
| Future Loss of Income | $352,000.00 |
| Past Loss of Enjoyment of Life | $ 5,000.00 |
| Future Loss of Enjoyment of Life | $ 35,000.00 |
| Past Mental Anguish | $ 5,000.00 |
| Future Mental Anguish | $ 35,000.00 |
| TOTAL | $592,000.00 |

On October 14, 2019, the trial court signed a judgment in favor of plaintiff in conformity with the jury's verdict, awarding plaintiff $433,600.00, after reduction for plaintiff's proportionate share of fault, and ordering that plaintiff was entitled to receive future medical care and related benefits at the expense of the defendants with a cap of $40,000.00, payable through the Future Medical Care Fund, for a total award of $473,600.00. Thereafter, plaintiff filed a motion for JNOV or alternatively, additur, which was denied by the trial court following a hearing.

Defendants then filed the instant appeal of the October 14, 2019 judgment, contending that the trial court erred in permitting plaintiff's expert economist, Dr. G. Randolph Rice, to testify at trial, when plaintiff failed to timely disclose the witness to defendants, and that the jury erred in awarding plaintiff past loss of income in the amount of $60,000.00 and future loss of income in the amount of $352,000.00.

Plaintiff also appealed, challenging the March 12, 2020 judgment denying his motion for JNOV, contending that the trial court erred in failing to grant JNOV as to the jury's finding that he was 20% at fault and as to the damages awarded by the jury, which plaintiff contends did not adequately compensate him for his past and future medical expenses, mental anguish, loss of enjoyment of life, and pain

3

and suffering.[2]

## DISCUSSION

### Denial of Motion *In Limine*

Defendants contend that the trial court erred in denying their motion *in limine* challenging the admissibility of the report and testimony of plaintiff's expert economist, Dr. Rice. If a trial court commits an evidentiary error that interdicts its factfinding process, this court must conduct a *de novo* review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect our applicable standard of review. See Williams v. Hendry, 2015-0104 (La. App. 1st Cir. 9/18/15) (unpublished), 2015 WL 5515538, citing Bolton v. B E & K Construction, 2001-0486 (La. App. 1st Cir. 6/21/02), 822 So. 2d 29, 32.

The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling on the admission or denial of evidence is whether the alleged error affected a substantial right of the party. LSA-C.E. art. 103(A). The party alleging prejudice by the evidentiary ruling of the trial court bears the burden of so proving. See Emery v. Owens-Corporation, 2000-2144 (La. App. 1st Cir. 11/9/01), 813 So. 2d 441, 449, writ denied, 2002-0635 (La. 5/10/02), 815 So. 2d 842. Generally, the trial court is granted broad discretion in its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Turner v. Ostrowe, 2001-1935 (La. App. 1st Cir. 9/27/02), 828 So. 2d 1212, 1216, writ denied, 2002-2940 (La. 2/7/03), 836 So. 2d 107.

---

[2]To the extent that plaintiff appealed the judgment denying his motion for JNOV, we note that the denial of a motion for JNOV is an interlocutory and non-appealable judgment. LSA-C.C.P. art. 1914(C). However, an appellate court may consider interlocutory judgments, such as the denial of a JNOV, as part of an unrestricted appeal from a final judgment when the appellant's brief indicates that he implicitly intended to appeal the judgment on the merits. See Thomas v. Barrios, 2016-0587 (La. App. 1st Cir. 2/17/17) 2017 WL 658244 *3, n.7 (unpublished). Thus, to the extent that plaintiff's appeal of the denial of his motion for JNOV challenges the jury's apportionment of fault and awards of damages on the merits we will consider plaintiff's appeal as part of the unrestricted appeal of the final judgment herein. See Rentrop v. Arch Insurance Co., 2017-0635 (La. App. 1st Cir. 12/29/17), 241 So. 3d 357, 364, n.4.

On July 1, 2019, defendants filed a motion *in limine* seeking to bar plaintiff from offering or attempting to offer evidence of economic losses included in the report and testimony of Dr. Rice given plaintiff's purported failure to timely submit Dr. Rice's report to defendants, which defendants contend severely prejudiced them. Defendants argued that Dr. Rice's report should be excluded, where the calculations therein were based on one paycheck stub for a job plaintiff held for only four months prior to the accident herein. Defendants averred that Dr. Rice's calculations failed to take into account plaintiff's prior employment history, including a period of unemployment from the beginning of 2015 until January or February of 2016, and two directly preceding periods of employment with temporary employment agencies. The trial court signed an order denying the motion *in limine* on July 2, 2019.

On appeal, defendants contend that the trial court erred in denying the motion *in limine*, where plaintiff failed to adequately supplement his discovery responses with the name and substance of the expert's testimony pursuant to LSA-C.C.P. art. 1428(A)(1), and where defendants were notified by email on June 17, 2019, merely three weeks prior to trial, that plaintiff intended to call Dr. Rice as a witness to support his wage loss claim. Defendants contend that they were significantly prejudiced by the late notice of this expert as they did not have an opportunity to adequately defend against Dr. Rice's opinion, were unable to obtain or prepare their own economic expert in the time since they were made aware of plaintiff's intention to call Dr. Rice, and were denied an opportunity to depose Dr. Rice prior to trial.

After careful review of the record, we find no error. Instead, the record reflects that once defendants were made aware of plaintiff's intentions to call Dr. Rice, they nonetheless failed to request a continuance of the trial to prepare their defense, depose Dr. Rice, or obtain their own expert to refute Dr. Rice's

5

calculations. Notably, on July 8, 2019, the day before the trial commenced, counsel for defendants filed an "Opposition to Plaintiff's Motion to Continue Trial."[3] In support of their opposition to plaintiff's request for a continuance, defendants stated that "[e]ven with the unanswered discovery responses, Defendants are prepared to cross Plaintiff's economic expert after establishing Plaintiff's employment history through his cross (thus preventing the need for a deposition of the expert)." In further opposition, the defendants argued that "the interests of justice are not served with a continuance of this matter until September 23, 2019," and "the interests of justice would not be served by delaying a trial scheduled to proceed in six days."

After thorough review of the record, we find no abuse of discretion by the trial court in allowing Dr. Rice to testify. The record shows that defendants were aware that plaintiff intended to call Dr. Rice three weeks prior to trial and, thereafter, not only failed to request a continuance in order to allow themselves an opportunity to depose Dr. Rice and obtain their own expert witness, but objected to a request for continuance by plaintiff. Further, defendant conceded that they did not need to depose Dr. Rice, and declared instead that they were prepared to cross examine Dr. Rice as to plaintiff's employment history. Under these facts, we find the assertion that defendants were severely prejudiced in their preparation of trial to be unsupported. See Kinney v. Bourgeois, 2006-2384, 2006-2385 (La. App. 1st Cir. 9/14/07) (unpublished), 2007 WL 2686113 at *5, writ denied, 2007-2026 (La. 1/7/08), 973 So. 2d 730 (wherein this court reversed the trial court's grant of a motion *in limine*, where the identity of the expert was revealed less than four weeks prior to trial, noting that opposing counsel made no effort to depose the expert upon learning of his identity, even though he was aware of the intention to call the expert to testify at trial.). As per Kinney, the defendants cannot now on

_____

[3]The record does not contain a copy of the motion to continue referenced in the defendants' opposition.

6

appeal use their strategic decision to oppose a continuance and move forward with trial as a basis to complain that they were prejudiced by inadequate time to prepare their defense or obtain their own expert economist.[4]

Accordingly, we find no abuse of discretion by the trial court in denying defendants' motion *in limine*. These arguments lack merit.

## Past and Future Loss of Income Awards

Defendants contend, in their second assignment of error, that the jury's award of $60,000.00 in past lost wages and $352,000.00 in future lost wages is manifestly erroneous, where Dr. Rice's calculations were based on incomplete and inaccurate information.

A plaintiff seeking damages for lost wages bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. Brown v. City of Madisonville, 2007-2104 (La. App. 1st Cir. 11/24/08), 5 So.3d 874, 887, writ denied, 2008-2987 (La. 2/20/09), 1 So. 3d 498. The jury has broad discretion in assessing awards for lost wages, but there must be a factual basis in the record for the award. Driscoll v. Stucker, 2004-0589 (La. 1/19/05), 893 So. 2d 32, 53. Where there is no basis for a precise mathematical calculation of a lost wage claim, the trier of fact can award a reasonable amount of damages without abusing its discretion. Burrell v. Williams, 2005-1625 (La. App. 1st Cir. 6/9/06), 938 So. 2d 694, 701.

Factors to consider in fixing awards for loss of earning capacity include: age, life expectancy, work life expectancy, appropriate discount rate, the annual wage rate increase, prospects for rehabilitation, probable future earning capacity, loss of earning ability, and the inflation factor or decreasing purchasing power of the applicable currency. Tate v. Kenny, 2014-0265 (La. App. 1st Cir. 12/23/15), 186 So. 3d 119, 129. Awards for lost future income are intrinsically insusceptible

---

[4]Defendants did not file an application for supervisory writs seeking review of the trial court's denial of their motion *in limine* prior to trial.

of mathematical exactitude, and as such, the trier of fact must exhibit sound discretion in rendering awards that are consistent with the record and do not impose a hardship upon either party. American Century Insurance Co. v. Terex Crane, 2003-0279 (La. App. 1st Cir. 11/7/03), 861 So. 2d 228, 234, writ denied, 2004-0327 (La. 4/2/04), 869 So. 2d 881.

In support of this assignment, defendants argue that plaintiff was only employed at Scaffolding Rental Erection Services earning $17.00 per hour for two months prior to the accident at issue herein and that plaintiff testified that prior to that, he generally earned $10.00 to $10.50 per hour performing manual labor jobs or handy-man type work. Defendants further contend that plaintiff failed to offer corroborating evidence to justify wage calculations based upon a $17.00 per hour wage and that had the correct figure of $10.50 been utilized to calculate past lost wages, the wages would have been $40,220.00. Defendants also contend that Dr. Rice's calculation was based on the assumption that plaintiff was unable to work from the time of the accident until trial, yet plaintiff testified that he did, in fact, work during that period performing yard work earning $30.00 per yard and that he was employed at Dycon as a laborer earning $10.50 per hour.

Dr. Rice testified that based on the pay stub plaintiff provided from his employment with Scaffolding Rental Erection Services, LLC, plaintiff was earning $17.00 per hour at the time of the accident. Based upon an average work schedule of 35.5 hours per week, Dr. Rice calculated that plaintiff earned an annual salary of $30,175.00. Using this figure and reducing it by the wages earned by plaintiff in 2016 prior to the accident, Dr. Rice opined that plaintiff's past lost wages, i.e., wages he would have earned from the date of the accident until the time of trial, was $76,300.00. Considering that plaintiff was 41 years of age at the time of trial, with a high school education, and a work-life expectancy of 20.01 years, Dr. Rice

8

calculated plaintiff's future earning capacity or lost wages, i.e., wages earned from the date of trial until plaintiff was in his early sixties, to be $573,796.00.

In considering the propriety of the jury's past and future income awards, we note that with reference to his employment abilities, plaintiff testified that since the accident, his neck is a lot better and his right shoulder is a little better, and that he can perform light duty work, including small engine repair work, but is unable to find anything steady. However, we also recognize, as the jury apparently did, that there were some inconsistencies in plaintiff's testimony. Plaintiff testified that the accident occurred around 2:00 p.m. in the afternoon, and that although he worked for Scaffold Rental Erection Services at the time, he was not at work because he did not have money for gas to get to work. Plaintiff further conceded that he may have reported to Dr. Domangue during his June 2016 visit that he was employed at Scaffold Rental Erection Services when he was not.

Moreover, the evidence established that, in addition to the May 25, 2016 accident herein, plaintiff was involved in an accident the previous month, on April 15, 2016, as a passenger in a vehicle that rolled over, and that plaintiff was transported to the emergency room with complaints of injuries to his hand, head, neck and back. Evidence was also presented to establish that plaintiff was involved in a subsequent accident on February 24, 2017, where he was rear-ended, injuring his back and shoulder,[5] and that the following month, on March 28, 2017, plaintiff was involved in a motorcycle accident resulting in a broken collarbone.

In awarding plaintiff $60,000.00 for past lost wages, an amount less than $76,300.00 as suggested by Dr. Rice, the jury obviously considered and weighed the evidence, including plaintiff's testimony concerning his employment history and the fact that plaintiff continued to work after the instant accident, despite his

___

[5]Plaintiff testified that he sustained back and neck injuries causing him pain similar to the pain he was experiencing before the accident and that he filed a claim for personal injuries for this accident, which resulted in a settlement of $4,750.00 for pain and suffering as well as compensation for damages to his truck.

9

alleged injuries. In awarding this amount, the jury may have also considered plaintiff's involvement in other accidents as a contributing factor as to his inability to earn future wages. On review, we find that the record contains a reasonable factual basis for the jury's award of past lost wages, and thus, find no error in the jury's award.

With reference to plaintiff's future loss of income, in awarding $352,000.00, rather than the amount of $573,796.00 suggested by Dr. Rice, the jury obviously rejected Dr. Rice's opinion in part. Although defendants argue that the jury's award is excessive in that plaintiff's involvement in other accidents could have contributed to his ability to earn future wages, we find that the jury's award is consistent with a finding that plaintiff earned wages of $10.50 per hour, which is supported by the record herein. Moreover, to the extent that defendants contend that the opinions of Drs. Domangue and Berry, which suggest that plaintiff is unable to work as a result of the accident herein, are unreliable because plaintiff was not forthcoming in reporting his involvement in other accidents, the jury likewise was able to consider this factor in rendering a reduced award.[6]

A fact finder may accept or reject the opinion expressed by an expert, in whole or in part and may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Ryan v. Zurich American Insurance Co., 2007-2312 (La. 7/1/08), 988 So. 2d 214, 222. Here, the transcript reveals that in addition to the opinion testimony of Dr. Rice, the jury heard evidence of plaintiff's work history and of his involvement in other accidents. To the extent that the defendants argue that Dr. Rice's calculations were based on insufficient income evidence, the defendants offered no testimony to refute Dr. Rice's testimony. Based on the evidence

---

[6]Defendants contend that Dr. Chad Domangue, who treated plaintiff in two separate courses of treatment, was not aware that plaintiff reinjured his neck and back in a similar rear-end motor vehicle accident in February of 2017. Defendants also point to the testimony of Dr. Joel Berry, denying that plaintiff reported experiencing any trauma after the instant accident.

10

presented, the jury determined that an award of $352,000.00 for future loss wages was appropriate. On review, we find there is a reasonable factual basis to support the jury's determination, and thus, we are unable to find an abuse of the great discretion afforded to the jury as the trier of fact.

This assignment also lacks merit.

## JNOV

Turning to plaintiff's arguments, we note that a JNOV is a procedural device authorized by Louisiana Code of Civil Procedure article 1811, by which the trial court may modify the jury's finding of fault or damages, or both, to correct a legally erroneous jury verdict. See LSA-C.C.P. art. 1811(F); Gutierrez v. Louisiana Department of Transportation & Development, 2011-1774 (La. App. 1st Cir. 3/23/12), 92 So. 3d 380, 385, writ denied, 2012-1237 (La. 9/21/12), 98 So. 3d 343. A JNOV is warranted when the facts and reasonable inferences point so strongly and overwhelmingly in favor of the moving party that the court believes that reasonable jurors could not arrive at a contrary verdict, not merely when there is a preponderance of evidence for the mover. Davis v. Wal-Mart Stores, Inc., 2000-0445 (La. 11/28/00), 774 So. 2d 84, 89; Weatherspoon v. Charter Home Health, L.L.C., 2012-1916 (La. App. 1st Cir. 6/7/13) (unpublished), 2013 WL 2488840, at *8, writ denied, 2013-1626 (La. 11/1/13), 125 So. 3d 430. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Davis v. Wal-Mart Stores, Inc., 774 So. 2d at 89. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Davis v. Wal-Mart Stores, Inc., 774 So. 2d at 89. When JNOV is denied, the appellate court simply reviews the record to determine whether there is legal error or whether the trier of fact

11

committed manifest error. McCrea v. Petroleum, Inc., 96-1962 (La. App. 1st Cir. 12/29/97), 705 So. 2d 787, 792.

### Denial of JNOV as to the Jury's Allocation of Comparative Fault

Plaintiff contends on appeal that the jury erred in attributing 20% fault for the accident to him and 80% to Mr. Woodburn. Notwithstanding a presumption that a following motorist who collides into the rear of a vehicle in front of him is at fault, a favored motorist can still be assessed with comparative fault if his substandard conduct contributed to the cause of the accident. See Graffia v. Louisiana Farm Bureau Casualty Insurance Co., 2008-1480 (La. App. 1st Cir. 2/13/09), 6 So. 3d 270, 274. Thus, once the presumption of negligence attaches to the defendant, the ordinary rules of comparative negligence apply and a plaintiff's damage award may be reduced by the degree that he was comparatively at fault. Matherne v. Lorraine, 2003-2369 (La. App. 1st Cir. 9/17/04), 888 So. 2d 244, 246.

In this case, the jury was presented with evidence establishing that Mr. Woodburn's vehicle impacted plaintiff's vehicle from the rear, thus attaching the presumption of negligence to Mr. Woodburn's conduct. The jury further heard plaintiff's testimony that he was stopped on Hwy. 51, at the entrance of the pawn shop for a couple of minutes, with his turn signal on, because a female in another vehicle was attempting to exit the pawnshop onto Hwy. 51, and they were trying to negotiate a way for plaintiff to enter the driveway. At trial, plaintiff testified that he did not recall speaking to anyone after the accident and that the paramedic was the first person to approach his vehicle. He later conceded that in his prior deposition testimony, he stated that he spoke to a woman after the accident.

The jury was also presented with Mr. Woodburn's testimony that he was slowing down to turn into the DOTD facility less than a block away, while traveling at a speed of 35 miles per hour. Mr. Woodburn checked his mirrors to make sure nothing was behind him, looked to the side to see a car passing him up,

12

and as soon as his eyes turned forward, he noticed plaintiff's vehicle thirty feet in front of him. Contrary to plaintiff's testimony, Mr. Woodburn testified that he did not notice any brake lights, turn signals, or blinkers on plaintiff's vehicle and that he did not see any vehicle attempting to exit the pawn shop parking lot. Mr. Woodburn instead testified that he saw a woman standing by the side of the road and that he believed plaintiff's vehicle was stopped in the roadway because he was talking to the woman on the side of the road. He further testified that, after the accident, the woman went up to plaintiff's vehicle to speak to plaintiff and his passenger.[7]

On review, we find that in evaluating the evidence, reasonable minds could differ as to the allocation of fault for the accident herein. The plaintiff and Mr. Woodburn presented differing versions of the circumstances surrounding the accident. The law is clear that, in considering a JNOV, the court cannot weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. Indeed, if there is substantial evidence opposed to the motion of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion for JNOV must be denied. Based upon the record before us, we cannot say that the jury's verdict and allocation of fault is one which reasonable people could not have rendered. Because reasonable persons could have arrived at the same verdict given the evidence presented to the jury, we find that the trial court was not manifestly erroneous in denying the JNOV as to the jury's allocation of fault.[8]

These arguments also lack merit.

---

[7]The jury verdict form provided the jurors with the opportunity to assign fault to a "Third Party not named in this lawsuit," but the jury declined to assign fault to this party.

[8]In denying the motion for JNOV, the trial court recognized that the presumption applied, but opined that the jury apparently concluded the presumption was overcome by the testimony.

13

### JNOV as to the Jury's Awards of Past and Future
### Medical Expenses and General Damages

Plaintiff next contends that the trial court erred in denying his motion for JNOV as to the jury's awards of past and future medical expenses and general damage awards of pain and suffering, loss of enjoyment of life, and mental anguish.

It is well-settled that a judge or jury is given great discretion in its assessment of quantum for both general and special damages. LSA-C.C. art. 2324.1; Guillory v. Lee, 2009-0075 (La. 6/26/09), 16 So. 3d 1104, 1116. Furthermore, the jury's assessment of quantum or determination of the appropriate amount of damages is a determination of fact that is entitled to great deference on appeal. Wainwright v. Fontenot, 2000-0492 (La. 10/17/00), 774 So. 2d 70, 74. An appellate court, on review, must be cautious not to re-weigh the evidence or to substitute its own factual finding just because it would have decided the case differently. Guillory, 16 So. 3d at 1117.

In a personal injury suit, the plaintiff bears the burden of proving the causal connection between an accident and the resulting injuries. Oden v. Gales, 2006–0946 (La. App. 1st Cir. 3/23/07), 960 So. 2d 114, 118. Whether the accident caused the plaintiff's injuries is a factual question that should not be reversed on appeal absent manifest error. Tate v. Kenny, 2014-0265 (La. App. 1st Cir. 12/23/15), 186 So. 3d 119, 127. On review of a JNOV, if reasonable persons could differ that the jury awards were abusively low, then the trial court was correct in denying the motion for JNOV.

Herein, the jury awarded plaintiff $10,000.00 for past medical expenses and $50,000.00 for future medical expenses. Plaintiff contends that because he incurred five rhizotomy procedures, multiple injections, medial branch blocks, and trigger point injections totaling $73,040.29 over a three-year period, the award of

$10,000.00 for past medical expenses is abusively low, where evidence of $73,040.29 in medical bills was introduced at trial.[9] Plaintiff further contends that the jury's award of $50,000.00 for future medical expenses is insufficient, where his physicians testified that he will need continuing care, including physical therapy and repeated rhizotomies, which may be every six months for an indefinite period of time and there is a 51% probability that plaintiff will need a neck or low back surgery in the future. Defendants note that the fact that plaintiff was involved in three other accidents in addition to the accident herein, resulting in complaints of similar injuries, could have led jurors to different conclusions as the cause of plaintiff's injuries.

In addition, the jury heard plaintiff testify that on his first visit with Dr. Domangue in June of 2016, he did not disclose that he was involved in the roll-over accident in April of 2016, or that he had injured his hand and treated at North Oaks Hospital for injuries to his neck, head, and back; that when he began seeing Dr. Domangue during a second treatment period from July 30, 2018 to November 26, 2018, he did not inform Dr. Domangue that Dr. Johnston had performed a second lumbar rhizotomy, and that he did not disclose that he had been in another accident on February 24, 2017; and that although Dr. Domangue prescribed physical therapy, he only performed therapy exercises at home. While Drs. Domangue and Berry testified that there was a 51% chance plaintiff may require surgery at some point in the future, Dr. Comeaux testified that plaintiff was not a candidate for future surgery.

The jury further awarded plaintiff $5,000.00 each for past pain and suffering, loss of enjoyment of life, and mental anguish and $35,000.00 each for

_____

[9]To the extent that plaintiff contends that the amount of past medical expenses was stipulated to by all parties, we note that defendants contend that no such stipulation exists in the record. Defendants contend that at the JNOV hearing, they merely agreed that the amount of $73,040.29 of medical care was claimed by plaintiff, but specifically denied any stipulation that the care claimed was related to the accident herein.

future pain and suffering, loss of enjoyment of life, and mental anguish, resulting in a total award of $120,000.00 in general damages. In rendering these general damage awards, the jury was presented with evidence that plaintiff was involved in multiple accidents from which he sustained similar-type injuries, and the jury may have determined that some of plaintiff's damages were caused by one or a combination of the other three accidents. Moreover, the jury heard evidence concerning the candidness of plaintiff's reports to his treating physicians as to his attending physical therapy, his work status, and his involvement in other accidents, which the jury obviously evaluated and weighed in making credibility determinations. In denying the motion for JNOV, the trial court noted that the jury verdict was unanimous and that the jury was presented with evidence that plaintiff was involved in four motor vehicle accidents in ten months resulting in some of the same injuries, which it characterized as a "big deal."

Considering all of the evidence and the reasonable inferences to be made therefrom in favor of defendants, we find cannot say the trial court was manifestly erroneous in denying plaintiff's motion for JNOV as to the jury's awards for medical expenses and general damages. Because the evidence presented to the jury is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions or could differ that the jury's awards were abusively low, we find no error in the trial court's denial of the JNOV. Thus, on review, we find no manifest error in the trial court's denial of plaintiff's motion for JNOV.

These arguments also lack merit.

## CONCLUSION

Based on the above and foregoing reasons, the October 14, 2019 judgment of the trial court, rendered in conformity with the jury's verdict is hereby affirmed. The March 12, 2020 judgment of the trial court, denying plaintiff's motion for

16

JNOV, is also affirmed. Costs of this appeal in the amount of $3,476.50 are assessed 20% to the plaintiff/appellant, Durell Barnett, and 80% to defendants, Patrick Woodburn and the State of Louisiana, through the Department of Transportation and Development.

**OCTOBER 14, 2019 JUDGMENT AFFIRMED; MARCH 12, 2020 JUDGMENT AFFIRMED.**